688 F.2d 1357
 Wendell POWELL, By and Through Sylvia POWELL, his mother and
next friend, and Wanda Williams, by and through Gloria
Williams, her mother and next friend, individually and on
behalf of all others similarly situated, Plaintiffs-Appellants,
v.
Richard S. SCHWEIKER, as Secretary of the Department of
Health and Human Services of the United States,
Defendant-Appellee.
 No. 81-5755.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 12, 1982.
 
 Amy E. Hirsch, Jacksonville Area Legal Aid, Anne L. Swerlick, Jacksonville, Fla., for plaintiffs-appellants.
 Alan M. Grochal, Baltimore, Holly A. Grimes, Atty., Health & Human Services, Atlanta, Ga., for defendant-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before MILLER, Judge*, TJOFLAT and CLARK, Circuit Judges.
 MILLER, Judge:
 
 
 1
 This appeal is from the district court's judgment of dismissal on cross-motions for summary judgment. The court denied the motion of plaintiffs-appellants (hereinafter "appellants"), granted the motion of the Secretary of the Department of Health and Human Services ("Secretary"), and affirmed the decision of the Secretary which denied Supplemental Security Income ("SSI") to appellant Powell.[1] The court also denied appellants' motion for class certification. We affirm.
 
 
 2
 Powell filed this cause as a class action on behalf of all persons under age 18 who have been denied SSI disabled child's benefits pursuant to regulations promulgated by the Secretary. Appellants seek to invalidate the Secretary's application of the regulations or the regulations themselves, particularly 20 C.F.R. § 416.915,[2] which limit eligibility for such benefits to those persons who have a listed impairment or the medical equivalent of a listed impairment. They also request a remand for reconsideration of their claims and for reconsideration of their motion for class certification.
 
 BACKGROUND[3]
 
 3
 Powell was born on November 23, 1962. Through his mother he applied for and was granted SSI disability benefits for mental retardation effective December 30, 1976. At that time, the examining physician rated his full-scale IQ as 53, noting that he exhibited no other obvious physical or emotional problems and would probably be capable of performing "simple routine repetitive work" on completion of whatever education he sought. In April of 1979, a subsequent examination showed that Powell had improved his full-scale IQ to 72. The examining physician classified him in the range of mild to borderline retardation and found that he was "capable of following one and two-step instructions and ... of performing routine and repetitive tasks with reliability"; further, that his demeanor and self-care ability were good, and that he suffered from "no emotional or psychiatric disabilities."
 
 
 4
 On the basis of the April of 1979 findings, the Secretary informed Powell that his disability benefits would be terminated after June of 1979 because his mental impairment was no longer considered severe (an IQ of 59 or less is specified in section 112.05[4] of Part B for the impairment of mental retardation). The decision was reviewed at a hearing before an administrative law judge ("ALJ"), who took testimony from Powell, his mother, and the Director of the local county Association for the Retarded. After reviewing the medical evidence, the ALJ upheld the termination decision. The Appeals Council declined to disturb the ALJ's decision, and it became the Secretary's final decision.
 
 
 5
 At the hearing before the ALJ, Powell testified that he was attending a local elementary school and taking courses in reading, mathematics, and money and banking; that he dressed himself and helped his mother at home, sweeping the floor and taking out the garbage; and that he played sports, watched television, and went to church.
 
 
 6
 Although he is capable of doing counting and subtraction, he has difficulty judging time and is often late for school. The Director of the county Association for the Retarded, who had known Powell for six years, stated that Powell performed many activities but needed constant supervision; that, over the period of time she had known him, he had "matured some"; and that he would be able to work in a sheltered environment, although (at age sixteen) he was not at the point where he could be gainfully employed.
 
 
 7
 The April of 1979 examination was by Doctor Harry Krop, a clinical psychologist, who found that Powell's test scores placed him in the lower borderline range of intellectual functioning; that his short-term memory and ability to recall digits were "unusually good for his overall intellectual level"; that his general fund of information, word knowledge, and academic skills were significantly depressed; and that his psychomotor and perceptual skills were in the range of "mild mental retardation." He also reported that Powell had moderate restriction of activities, moderate constriction of interests, moderate restriction of his ability to relate to people, and no deterioration in personal habits.
 
 
 8
 Powell's school records contain comments by a helping teacher, who listed his strengths as politeness and ability to get along with other students and his weaknesses as lack of peer interaction, limited attention span, perseverence, memory, and punctuality; by his language teacher, who reported that he was able to read to some extent-"the level of the 'average' elementary E.M.H. (Educable Mentally Handicapped) child," and that his handwriting was at a "slow rate"; and by his math teacher, who placed him in the lowest academic E.M.H. class-" well below" the average E.M.H. eleven year old sixth graders, but commented that he had little difficulty in adjusting to surroundings at school and got along well with the other students.
 
 OPINION
 
 9
 The primary issue[5] in this case is whether the regulations as applied by the Secretary in denying supplemental security income to appellants are inconsistent with the Social Security Act's provision that a child under age 18 shall be considered disabled "if he suffers from any medically determinable physical or mental impairment of comparable severity" to that which determines that a person age 18 or over is disabled. 42 U.S.C. § 1382c(a)(3)(A). (The Secretary's regulations[6] contain, inter alia, the same "comparable severity" standard.)
 
 
 10
 Appellants argue that the standard established by the Secretary's regulations is not only different from, but more restrictive than, the standard for adults (persons age 18 or over), because the disability of adults is evaluated (under section 416.904) by considering whether their impairment(s) is listed in Part A of Appendix 1 of Subpart I of part 416, or, although not listed, whether such impairment(s) is determined to be the medical equivalent of a listed impairment, or whether, although neither listed nor equivalent, such impairment(s) is "severe" and prevents the person "from engaging in substantial gainful employment"; whereas, in the case of a child under 18, a third alternative comparable to vocational factors for adults is not provided. However, the district court found that, although treated differently (Part A and the medical equivalent of Part A listed impairments are applicable to a child under 18), child claimants were not clearly treated more restrictively. That finding is amply supported by the provision[7] of Part B of said Appendix 1 for children under 18 only-"Additional medical criteria for the evaluation of impairments of children under age 18 (where criteria in Part A do not give appropriate consideration to the particular disease process in childhood)." As pointed out by the Secretary, the listings in Part B contain examples where the degree of some medical impairments is evaluated in terms of the child's ability to function, citing section 101.03C (inability to perform age-related personal self-care activities) and section 112.03 (marked restriction in the performance of daily age-appropriate activities) of Part B.
 
 
 11
 Appellants further argue that the listings for children under age 18 do not provide for consideration of "all the pertinent facts" in each individual case, as provided for adults by section 416.902. However, that section specifies that the determination of disability for adults may be based on vocational factors as well as medical considerations, so that appellants' "all the pertinent facts" argument essentially becomes the argument discussed above, namely: that, in the case of a child under 18, the standard established by the Secretary does not provide an alternative comparable to vocational factors for adults.
 
 
 12
 "Comparable" is defined by Webster's Third New International Dictionary (1971) as-
 
 
 13
 1: capable of being compared; a: having enough like characteristics or qualities to make comparison appropriate .... b: permitting or inviting comparison often in one or two salient points only ....
 
 
 14
 Not having defined "comparable" and in the absence of legislative history, Congress is presumed to have intended the ordinary meaning[8] and, in turn, it clearly left it to the Secretary to promulgate regulations to implement that concept. 42 U.S.C. §§ 405(a) and 1383(d)(1). Thus, in providing an identical standard for adults and children under 18 in three salient points, namely, the listings in Part A, the medical equivalent of a listed impairment in Part A, and the durational requirement of twelve months (section 416.901), it could well be said that the Secretary satisfied the Congressional mandate. However, the Secretary went further by providing not only the listings in Part B for children under 18 but that some of the impairments be evaluated in terms of the child's ability to function.[9]
 
 
 15
 The Secretary's regulations must be sustained as long as they are reasonably related to the purposes of the legislation. Schweiker v. Wilson, 450 U.S. 221, 234, 101 S.Ct. 1074, 1082, 67 L.Ed.2d 186 (1981); Mourning v. Family Publications Services, Inc., 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973); State of Florida v. Matthews, 526 F.2d 319, 323 (5th Cir. 1976). See Matthews v. De Castro, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976); James v. Califano, 590 F.2d 573, 575 (4th Cir. 1979). When faced with a problem of statutory construction, the courts should show "great deference" to the interpretation by the agency charged with its administration. Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). See Ford Motor Co. v. Milhollin, 444 U.S. 555, 565, 100 S.Ct. 790, 796, 63 L.Ed.2d 22 (1980). This is particularly true in the case of the Social Security Act, which the Supreme Court has described as "among the most intricate ever drafted by Congress." Schweiker v. Gray Panthers, 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981).
 
 
 16
 All of this is not to say that the Secretary's interpretation of "comparable severity" is the only reasonable interpretation, Unemployment Comm'n v. Aragon, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946); or that it is the interpretation this court would have rendered had the question arisen in the first instance in this judicial proceeding. Schweiker v. Wilson, supra; Udall v. Tallman, supra. Nor does it imply that the interpretation by appellants, who would require a full-blown evaluation of all impairments measured by a child's ability to function (learning, growth, activity, and development), necessarily is unreasonable; although it must be recognized that "(t)here are limited resources to spend on welfare" and that "costly fact finding procedures ... would dissipate resources that could have been spent on the needy." Schweiker v. Gray Panthers, 453 U.S. at 48, 101 S.Ct. at 2642.[10] Appellants argue that "no adult SSI claimant would be limited to proof of disability solely by an IQ test," but this is merely another form of the contention that the law requires a full blown evaluation of all impairments measured by a child's ability to function. Even if the contention were correct, it does not follow that child claimants here could qualify for SSI benefits. Finally, the regulatory scheme established by the Secretary would not be inconsistent with the statute merely because it might result in some inequity. See Matthews v. De Castro, supra; Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).
 
 
 17
 The statute with which we are concerned was enacted in 1972 (Social Security Amendments Act of 1972, Pub. L. No. 92-603, § 1614, 86 Stat. 1329, 1471), to become effective January 1, 1974. On October 20, 1976, Congress enacted the Unemployment Compensation Amendments Act of 1976 (Pub. L. No. 94-566, 90 Stat. 2667), section 501(b) of which mandated the Secretary to publish, within 120 days after enactment, criteria to be employed to determine disability, as defined in section 1614(a)(3) of the Social Security Act (42 U.S.C. § 1382c), in the case of children under 18. These criteria in the form of Part B were promulgated accordingly.[11] Of interest is a report of "April 1977" by the Staff of the Senate Finance Committee entitled "The Supplemental Security Income Program," 95th Cong., 1st Sess., at 125 (Comm. Print 1977). With respect to disabled children, it states, inter alia:
 
 
 18
 The law defines a disabled child as a person under age 18 who is not engaged in substantial gainful activity and who "suffers from any medically determinable physical or mental impairment of comparable severity" to an impairment deemed disabling to an adult. The nonmedical vocational factors were not applied to the children for basically the same reasons they had not been applied to disabled widows in earlier legislation, i.e., that as a group they had not had enough attachment to the labor force to make application of these factors feasible.
 
 
 19
 The development of guidelines for determining childhood disability proved to be an extraordinarily slow and difficult process for the Social Security Administration. By October 1976, four years after the enactment of the legislation, there were still no adequate guidelines to assist the State agencies in making their determinations.
 
 
 20
 As a result, Congress found it necessary in legislation enacted in October 1976 (Public Law 94-566) to mandate that the guidelines be issued within 120 days after the law was enacted. Regulations establishing such guidelines were issued .... At this time there has been insufficient experience with the new guidelines to evaluate their impact or effectiveness.
 
 
 21
 Although the Staff report postdates the statute, it, nevertheless, at least put the members of the Finance Committee on notice that regulations establishing the mandated guidelines had been promulgated; also, that the committee's Staff was of opinion that the reason nonmedical vocational factors had not been applied to children under 18 was the same as that for not applying such factors to disabled widows in earlier legislation,[12] namely: as a group, they had not had enough attachment to the labor force to make application of such factors feasible. Significantly, both the Staff report containing these comments and the new Part B listings in the regulations (containing no separate nonmedical-vocational factors) ignored an earlier statement (122 Cong.Rec. 34025, 34026 (Sept. 30, 1976)), by Senator Hathaway, cited by appellants, who was not a member of the Senate at the time the statute was enacted.[13] There is no evidence that the Senate Finance Committee was in disagreement with the Staff report or with the Secretary's regulations. Indeed, it would be expected that if the committee had disagreed, it would have sought to implement its oversight function by proposing amendments to a most appropriate House-passed "vehicle," namely: Supplemental Security Income Disability Amendments of 1979, over which the committee had jurisdiction. We are persuaded that this amounts to tacit approval by a key committee of Congress and that this is of more significance in ascertaining Congressional intent than an isolated, post-enactment statement of personal views on the floor of the Senate. See Regional Rail Reorganization Act Cases, 419 U.S. 102, 132, 95 S.Ct. 335, 352, 42 L.Ed.2d 320 (1974). Although the views of a subsequent Congress cannot override the unmistakable intent of the enacting one, such views are entitled to "significant weight," and "particularly so when the precise intent of the enacting Congress is obscure." Seatrain Shipbuilding Corp. v. Shell Oil Co., 444 U.S. 572, 596, 100 S.Ct. 800, 813, 63 L.Ed.2d 36 (1980). See NLRB v. Bell Aerospace Co., 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974). To a lesser degree, perhaps, the views of the Senate Finance Committee are not without value in the circumstances of this case.
 
 
 22
 In view of all the foregoing, we hold that the Secretary's regulations as applied in denying benefits to appellants are not arbitrary, capricious, an abuse of discretion, or otherwise inconsistent with the law. 5 U.S.C. § 706(2) (A); Batterton v. Francis, 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448 (1977).
 
 
 23
 The district court's decision to not reach the class certification issue was clearly correct.
 
 
 24
 The judgment of the district court is AFFIRMED.
 
 CLARK, Circuit Judge, dissenting:
 
 25
 I respectfully dissent. It may be that the facts do not support the claims that Wendell Powell and Wanda Williams are entitled to Supplemental Security Income. However, the holding of the majority opinion in this class action denies benefits to all class members on the basis of a standard that is contrary to the intent of Congress. In reviewing agency action, we have the responsibility to ensure that an agency of the Executive Branch adheres to clear Congressional statutory directives. To do otherwise is to condone unelected agency appointees subverting the will of the people as expressed through the Congress. The result of the majority opinion is to deny a person under age 18 the equal right with an adult to prove his disability.
 
 
 26
 The statute involved, 42 U.S.C. § 1382c, states in pertinent part:
 
 
 27
 An individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (or, in the case of a child under the age of 18, if he suffers from any medically determinable physical or mental impairment of comparable severity).
 
 
 28
 42 U.S.C. § 1382c(a)(3)(A) (emphasis added). In regulations promulgated under this statute, an adult may establish his eligibility in any of three ways by demonstrating he has (1) a listed medical impairment, (2) the medical equivalent of a listed impairment, or (3) vocational factors that would prevent him from finding work in the national economy.
 
 
 29
 This first route available to both adult and under age 18 claimants is to prove that their impairments meet the criteria of "listed impairments." 20 C.F.R. § 416.917. The listings are intended to summarize current medical knowledge concerning certain disabling conditions. The listings eliminate the need for further inquiry or evaluation where a condition is generally recognized as severe. These listings appear in Subpart I, Appendix 1, 20 C.F.R. Proof of a listed disease or impairment meeting the degree specified in the listing establishes proof of disability and eligibility for benefits. This evidentiary route to prove eligibility is available to both adults and children.
 
 
 30
 The second route is to prove the claimant's impairment is "medically the equivalent" of impairments found in the listing of impairments previously discussed. Such medical equivalents might be established by showing a combination of cardiac impairment, diabetes, and emphysema, which separately might not reach the severity required in the "listed impairments," but in combination through evidence by one or more physicians establish disability and eligibility under this second category. Both adults and children under age 18 may establish eligibility through this form of proof.
 
 
 31
 The Secretary, and common knowledge, recognizes that a person may be disabled even though he cannot qualify under either the "listed impairments" or the "medical equivalents" criteria previously discussed. The Secretary has provided a third route for adult claimants to prove disability whereby an adult may establish through a combination of medical and/or vocational factors an inability to work. 20 C.F.R. § 416.902(b). Whether an individual has insufficient residual function and capacity to show unemployability is further discussed in 20 C.F.R. § 416.905. Regarding the establishment of disability, 20 C.F.R. § 416.902 states "(w)hether an impairment in a particular case constitutes a disability is determined from all the pertinent facts of that case."
 
 
 32
 The appellants complain that the Secretary has refused to give claimants under the age 18 an opportunity to prove disability based upon consideration of "all the pertinent facts." Under the Regulations, children may only prove disability by the first two routes, listed impairments or the medical equivalents of the listed impairments. Failing proof of one of these two, eligibility is denied. Thus, it is clear on its face that the Secretary has failed to provide a comparability standard as required by Congress. This is a denial of equal treatment to a particular age group.
 
 
 
 *
 Honorable Jack R. Miller, Judge, U.S. Court of Customs and Patent Appeals, sitting by designation
 
 
 [1]
 Appellant Wanda Williams was added as a party-plaintiff in view of the Secretary's failure to object to a motion to intervene. The district court noted that she had submitted no statement of facts or details of administrative proceedings leading to denial of her claim for SSI benefits and, therefore, her complaint was read as challenging only the legal sufficiency of the Secretary's regulations for evaluating child disability. (Powell's complaint charges failure of the Secretary to follow the appropriate statutory and regulatory standards.) Accordingly, the factual background of this case is necessarily limited to that of appellant Powell
 
 
 [2]
 Citations to 20 C.F.R. are to the revision as of April 1, 1979, unless otherwise indicated. Although later revisions, such as the one as of April 1, 1981, contain some changes in wording, format, and regulation number, the substance of the regulations pertinent to this case remains the same
 
 
 [3]
 For a fuller exposition of the facts, including a summary of the administrative record presented by the Secretary and adopted by Powell, see the district court's opinion reported at 514 F.Supp. 439 (M.D. Fla. 1981)
 
 
 [4]
 References to sections are to 20 C.F.R
 
 
 [5]
 Appellants apparently do not take issue with the Secretary's point that his decision denying Powell SSI benefits was based on substantial evidence. See 42 U.S.C. § 405(g). As the district court observed, "plaintiffs' attack" goes to the Secretary's failure to use factors comparable to vocational factors for adults which we discuss infra
 
 
 [6]
 §§ 416.901(b)(1) and 416.915
 
 
 [7]
 In 20 C.F.R. revision as of April 1, 1978, section 416.917
 
 
 [8]
 Jones v. Liberty Glass Co., 332 U.S. 524, 531, 68 S.Ct. 229, 232, 92 L.Ed. 142 (1947). The Supreme Court, in Wheeler v. Barrera, 417 U.S. 402, 420, 94 S.Ct. 2274, 2284, 41 L.Ed.2d 159 (1974), modified on other grounds, 422 U.S. 1004, 95 S.Ct. 2625, 45 L.Ed.2d 667 (1975), declared that "comparable" does not mean "identical" for purposes of the statute providing for federal funding of special programs for educationally deprived children of public and nonpublic schools and requiring that "comparable services" be provided for both categories of children
 
 
 [9]
 In his comments on the new Part B listings (42 Fed.Reg. 14,705, 14,705-06 (1977)), the Secretary stated that the criteria-
 were developed (over a 2-year period) in consultation with the Social Security Administration's Medical Consultant Staff, augmented by physicians with expertise in specific subspecialties of pediatrics.
 The Secretary explained:
 All the listed impairments have a severe impact on the child's development in one form or another-physical, mental, emotional, or social. Thus, within this context, we believe that we have complied with Congressional intent and the law.
 ... The medical criteria proposed ... do result in functional limitations or restrictions, depending on the nature of the impairments, and these have been considered.
 ....
 ... We also considered developmental milestones and, where they apply, these criteria were incorporated into the Listing so that the regulations do describe childhood impairments that interfere with the child's development.
 
 
 [10]
 The Secretary has stated that-
 the use of vocational factors is not appropriate (for children under age 18) since the activities of children under age 18 are extremely difficult to measure in vocational terms. In view of this, it is more equitable to evaluate childhood claims only on medical terms-i.e., the impairment must meet or equal the Listing of Impairments. However, many conditions have a different effect on children than on adults, and for this reason a supplemental Listing of Impairments (Part B) is also used for children. This supplement realistically expands the area of medical consideration for children, and lessens any inequity that could result because of the absence of vocational evaluation.
 
 
 [45]
 Fed.Reg. 55,566, 55,570-71 (1980)
 
 
 [11]
 42 Fed.Reg. 14,707, 14,708-13 (March 16, 1977); also contained in the revision of 20 C.F.R. as of April 1, 1977, Appendix 1 of Subpart I
 
 
 [12]
 See Sullivan v. Weinberger, 493 F.2d 855 (5th Cir. 1974), cert. denied, 421 U.S. 967, 95 S.Ct. 1958, 44 L.Ed.2d 455 (1975)
 
 
 [13]
 The Senator opined that the assessment of whether a child's disability was of "comparable severity" to that of an adult should refer to the impact on his ability to function successfully within age-appropriate expectations in the areas of learning, language, self-help skills, mobility, and social skills