In re Patti LENNON a/k/a Patricia M. Lennon, Debtor.

Bankruptcy No. 84–04162A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Sept. 5, 1986.

Robert L. Coley, Atlanta, Ga., Trustee.

ORDER

STACEY W. COTTON, Bankruptcy Judge.

Before the Court is a motion filed by Robert L. Coley, standing Chapter 13 trustee. The motion seeks direction regarding the disposition of undistributed payments held by the Chapter 13 trustee upon conversion from a Chapter 13 to a Chapter 7 case. No response to the motion has been filed by the debtor or the Chapter 7 trustee.

This debtor's Chapter 13 case was filed September 17, 1984. After an unsuccessful effort at rehabilitation, debtor was unable to obtain confirmation of her plan. The Court notes that an order of confirmation was entered June 25, 1985 but was vacated by order of July 17, 1985 because it had been inadvertently entered. Thereafter, the case was converted to a Chapter 7 case by Order of December 6, 1985.

During the period from the filing of the Chapter 13 case to the conversion to Chapter 7, the standing Chapter 13 trustee received payments from debtor of $642.24 which remain undistributed. The trustee alleges that he is unable to determine whether the undistributed funds should be turned over to the Chapter 7 trustee or be paid to the debtor.

## LEGAL DISCUSSION

This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2), which this Court has jurisdiction to determine. The issue presented is the proper disposition of undistributed post-filing pre-conversion payments by a Chapter 13 debtor to the standing Chapter 13 trustee when the case is converted to a Chapter 7 case.

The Bankruptcy Code is unclear with regard to the proper disposition of such payments upon conversion from Chapter 13 to Chapter 7. Resolution of this issue requires an analysis and determination of what is property of the Chapter 13 estate, and upon conversion what becomes property of the converted Chapter 7 estate.

In the present case no plan was confirmed. 11 U.S.C. Section 1326(a)(2) provides that "[i]f a plan is not confirmed, the trustee shall return any payments to the debtor ..." after deducting administrative expenses. If applicable, this provision will dispose of this matter. Accordingly, the Court must first determine the applicability of Section 1326(a)(2) as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 to the subject case. The 1984 amendments were enacted July

10, 1984 and the amendments relevant here became "effective to cases filed 90 days after the date of enactment of this Act." Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 553(a), 98 Stat. 333, 392. Therefore, the 1984 Amendments to Section 1326 are inapplicable to cases filed prior to the effective date thereof. The subject case was filed September 17, 1984 almost a month before the effective date of the Amendments. Thus, present Section 1326 does not apply to the subject case.

When Congress enacted Chapter 13, it demonstrated its concern over the failure of old Chapter XIII of the Bankruptcy Act to encourage consumer debtor use of the chapter for creditor payment as opposed to straight liquidation. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 116–120, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6076–80. Chapter 13 of the Bankruptcy Code was designed for use by individual consumer or business debtors with regular income and certain debt limitations. As the history states, these limitations "create an irrebuttable presumption that Chapter 13 is inappropriate for businesses with more than $100,000 in unsecured debt or more than $500,000 in secured debt" while providing an alternative to Chapter 11 for small sole proprietors. *Id.* at 119, *reprinted in* 1978 U.S.Code Cong. & Ad.News 6080 [1]. Chapter 13 facilitates the adjustment of debts and rehabilitation of individuals with sufficiently stable and regular income through "plans funded out of future income, under the protection of the court." 5 *Collier on Bankruptcy,* ¶. 1300.02, at 1300–18 (15th ed. 1986).

It is mandatory under Section 1322(a)(1) that a Chapter 13 plan provide for submission of all or a part of debtor's future earnings or income for execution of the plan. This is the principal reason for the Section 1306 inclusion of future earnings as property of the Chapter 13 estate. Thus there is a presumption that Chapter 13

---

**1.** Section 109(e) as enacted provided that only an individual with less than $100,000 unsecured debts and less than $350,000 secured debts, may be a debtor under Chapter 13.

payments are made from future earnings. 5 *Collier on Bankruptcy*, ¶. 1322.01 [3][H], at 1322–15 (15th ed. 1986); H.R. Rep. No. 595, 95th Cong., 1st Sess. 123, *reprinted in* 1978 U.S.Code Cong. & Ad. News 6084. Otherwise, by funding a plan through liquidation, the legislative purpose of debtor rehabilitation is frustrated and the distinction between Chapter 13 and Chapter 7 is practically eliminated. *In re Gavia*, 24 B.R. 573, 575 (Bankr.App.Panel 9th Cir.1982); *Cf. Matter of Anderson*, 21 B.R. 443 (Bankr.N.D.Ga.1981).

The statutory scheme of the Bankruptcy Code reflects a congressional intent to make attractive and encourage greater use, which must be voluntary, of Chapter 13 rehabilitation and creditor payment, rather than Chapter 7 liquidation with little or no creditor payment.[2] The Eleventh Circuit in *In re Hall*, 752 F.2d 582, 590 (11th Cir. 1985) noted this congressionally intended attractiveness of Chapter 13 as a goal in correcting deficiencies in Chapter XIII of the old Bankruptcy Act. Debtors are thus encouraged to make commitments of future earnings to pay creditors in Chapter 13. When a debtor, persuaded by the appealing benefits of Chapter 13 rehabilitation fails in the effort and converts to Chapter 7, it would seem contrary to the congressionally declared public policy choices underlying Chapter 13 to include, upon conversion, undistributed post-filing payments by a Chapter 13 debtor in the Chapter 7 estate. *Hannan v. Kirschenbaum (In re Hannan)*, 24 B.R. 691, 692 (Bankr.E.D.N.Y.1982). The Court in *Hannan*, aptly stated the principle as follows:

> When a Chapter 13 plan does not work out, the debtor has the privilege of converting to Chapter 7, and when he exer-

cises that right, no reason of policy suggests itself why the creditors [and the debtor] should not be put back in precisely the same position as they would have been had the debtor never sought to repay his debts by filing under Chapter 13. *Hannan*, 24 B.R. at 692.

This precise restoration of position does not necessarily occur, however, since under Section 349(b) the Court may order otherwise for cause. Similarly, Section 348(d) specifically provides for treatment of post-filing, pre-conversion debts as having arisen pre-petition, thereby allowing those claims, other than a claim specified in Section 503(b), to be discharged. This result is consistent with the policy choices of Congress as expressed in amended Section 1326(a)(2).

The effect of conversion of a case from one chapter under the Bankruptcy Code to another is governed by Section 348. This section provides that the date of filing of the petition, the commencement of the case, and the order of relief are unaffected by the conversion except as provided in Section 348(b) and (c). These exceptions are inapplicable here and do not relate to the creation or the composition of the estate. Therefore, upon failure to obtain confirmation of a plan or to complete payments under a confirmed plan and upon conversion of the case from Chapter 13 to Chapter 7, the debtor is deemed to have commenced the Chapter 7 case as of the date the original Chapter 13 petition was filed. *Resendez v. Lindquist*, 691 F.2d 397 (8th Cir.1982); *Dennis v. W.S. Badcock Corp. (In re Dennis)*, 31 B.R. 128 (Bankr.M.D.Ga.1983); *Cranshaw v. Merritt & McKenzie, Inc. (In re Allied Mechanical Services, Inc.)*, Case No.

---

**2.** For example: Section 342(b) requires the court clerk to give debtors notice of availability of relief under other chapters; Section 541(a)(6) excludes future earnings in Chapters 7 and 11; and Section 706 provides an individual debtor the absolute right to convert from one Chapter to another, with limited exceptions; Section 1301 provides for a co-debtor stay; Section 1306 includes future earnings as property of the estate; Section 1326 requires debtors to commence payments within 30 days with such pay-

ments to be returned to the debtor if no plan is confirmed; Section 1327 makes a confirmed plan binding on the debtor and all creditors and vests all property of the estate in the debtor; Section 1328 provides a more liberal discharge or so-called "super-discharge" (one not subject to the usual discharge objections as in Chapters 7 or 11); and Section 1329 provides for modification of a plan after confirmation upon request of the debtor, the trustee or the holder of an allowed unsecured claim.

82–04321A, Adv. No. 85–0255A (Bankr.N. D.Ga. June 16, 1986) (Drake, B.J.). Thus, upon conversion, Section 348(a) requires the Court to look back to the date of the filing of the original Chapter 13 petition to determine the creation of the estate and what is included in property of the Chapter 7 estate. Several courts have applied this relation back principle in determining property of the Chapter 7 estate. *See In re Peters*, 44 B.R. 68 (Bankr.M.D.Tenn.1984) (undistributed funds held by Chapter 13 trustee, upon conversion, did not become property of Chapter 7 estate); *In re Bullock*, 41 B.R. 637 (Bankr.E.D.Pa.1984) (post-filing payroll deductions not property of Chapter 7 estate upon conversion); *Oliphant v. Amarillo Pantex Federal Credit Union*, 40 B.R. 577 (Bankr.N.D.Tex.1984) (upon conversion court determined setoff rights as of filing date of original petition); *In re McFadden*, 37 B.R. 520 (Bankr.M.D. Pa.1984) (wages earned and paid to Chapter 13 trustee not property of Chapter 7 estate). *Hannan v. Kirschenbaum (In re Hannan)*, *supra*.

The cases on the issue, however, are divided. Other courts have reached a contrary conclusion. *See Resendez v. Lindquist, supra* (after conversion to Chapter 7, debtors could not claim undistributed funds as exempt since they became a part of the estate); *Armstrong v. Lindberg (In re Lindberg)*, 735 F.2d 1087 (8th Cir.1984) (date of conversion determines what exemptions may be claimed and what constitutes property of the estate); *In re Kao*, 52 B.R. 452 (Bankr.D.Or.1985) (Chapter 7 trustee not required to turnover sums received from Chapter 13 trustee); *In re Winchester*, 46 B.R. 492 (Bankr.App. Panel 9th Cir.1984) (date of conversion controls determination of property of Chapter 7 estate and debtor's exemptions in that property); *In re Wanderlich*, 36 B.R. 710 (Bankr.W.D.N.Y.1984) (pre-confirmation undistributed wages held by Chapter 13 trustee become property of Chapter 7 estate, but debtors may claim exemption therein); *In re Tracy*, 28 B.R. 189 (Bankr. D.Me.1983) (wages earned post-petition upon conversion become property of Chap-

ter 7 estate, exemption issue not reached); *In re Giambitti*, 27 B.R. 492 (Bankr.D.Or. 1983) (post-confirmation payments held by Chapter 13 trustee may not be claimed as exempt after conversion to Chapter 7 case); *In re Stinson*, 27 B.R. 18 (Bankr.D.Or. 1982) (property of Chapter 7 case converted from Chapter 13 is that property in which debtor held an interest at time of conversion), *rev'd*, *Stinson v. Bishop*, No. 83–43–RE (D.Or. April 26, 1983) (attached as Appendix to *In re Kao*, 52 B.R. 454); and *In re Richardson*, 20 B.R. 490 (Bankr.W.D.N. Y.1982) (if no confirmation, payments are property of debtor; if plan confirmed creditors given non-vested interest in undistributed post-confirmation pre-conversion wage payments, but upon conversion funds go to Chapter 7 estate). These courts have generally concluded that the conversion date does not relate back and that the conversion date is the controlling date in determining what property is includable in the Chapter 7 estate. The decisions base their conclusions upon policy arguments of equity and fairness rather than statutory construction. They generally treat the Chapter 13 and Chapter 7 estates the same, including property of the Chapter 13 estate, defined by Section 1306, as property of the converted Chapter 7 estate.

The court in *Resendez* also used an analysis of Section 542(a) and Bankruptcy Rule 1019(5) to support the notion that all property of the estate must be turned over to the Chapter 7 trustee. The merit of this argument is more apparent than real, however, because the term "property of the estate" is a word of art and does not readily equate with the term "property." *See In re Peters, supra*, 44 B.R. at 72. Section 542(a) and Rule 1019(5) are of no value in determining the present issue of defining property of the estate because they do not relate to the creation or composition of the estate.

A Chapter 13 case is commenced by the filing of a petition pursuant to Section 301. Section 103(a) makes Chapters 1, 3 and 5 applicable in a case under Chapter 7, 11 and 13. Thus, the commencement of the

Chapter 13 case creates "an estate" under Section 541(a). To determine the "property of the estate" in a Chapter 13 case, the Court must, however, look to the provisions of both Section 541 and Section 1306. The Section 541 specification of property of the estate is altered by Section 1306 which encompasses and expands it to include property acquired by the debtor after commencement of the case and post-filing earnings. The alteration is a significant one which is designed to facilitate the objectives and operation of Chapter 13 cases and plans. This enlargement of property of the Chapter 13 estate, however, raises the question of whether it applies in the Chapter 7 estate upon conversion.

At least one case suggests that unless the property as defined in Section 1306 is property of the Chapter 7 estate upon conversion, a Chapter 13 debtor's post-filing after-acquired property could not be brought into the estate. *In re Winchester*, 46 B.R. 492, 495 (Bankr.App. Panel 9th Cir.1984). In *Winchester* the court noted:

> Therefore, it is only logical that property of the Chapter 7 estate in a converted Chapter 13 case should be determined on the date of conversion. Otherwise, the after-acquired property could not be included in the Chapter 7 estate. Once the property is revested in the debtor after confirmation, he can do anything with it so long as it is not subject to a lien provided for in the plan or order confirmation. 11 U.S.C. §§ 1327(b) and (c). Thus, during the course of a plan, which can last as long as five years, a debtor may sell, abandon, consume, or trade-in most of his assets. Combining this with the possibility of after-acquired property means that by the time of conversion the estate may have been changed completely in character and amount.

> \*  \*  \*  \*  \*  \*

It is only reasonable that the debtor be required to place after-acquired property into the Chapter 7 estate if he is going to be relieved from liability of post-petition claims. Often it is the post-petition indebtedness which was used to acquire the after-acquired property.

*Winchester*, 46 B.R. at 495.

The reasoning of *Winchester, supra,* and similar cases, however, appears to ignore the language of Section 541. The scope of the Section 541 specification of property of the estate is very broad. It includes, in subsection (a)(1), "all legal or equitable interests of debtor in property as of the commencement of the case," with limited exceptions. Section 541(a) also specifies that the estate includes:

> (6) [p]roceeds, product, offspring, rents, or profits of or from property of the estate, *except such as are earnings from services performed by an individual debtor after commencement of the case.*
>
> (7) [a]ny interest in property that the estate acquires after the commencement of the case. (emphasis added).

The broad language of Section 541 is intended to and does, upon conversion, include post-filing pre-conversion after-acquired property of either a Chapter 11 or Chapter 13 debtor. Post-filing earnings from services of the individual debtor, however, are excluded. This Section 541 exclusion makes no distinction between a case filed originally as a Chapter 7, or one converted from Chapter 11 or 13 to Chapter 7.

A converted Chapter 13 is analogous to an individual debtor's unsuccessful Chapter 11 case upon conversion to Chapter 7. This conclusion is illustrated by the case of *In re Acton Foodservices Corp.*, 39 B.R. 70 (Bankr.D.Mass.1984). In *Acton Foodservices,* the debtor filed a voluntary Chapter 11 case on December 2, 1980 which failed and was converted to Chapter 7 on June 22, 1982. At issue was whether an alleged cause of action, that arose during the unsuccessful Chapter 11, was property of the converted Chapter 7 estate. The Court stated:

> Additionally, '[a]ny interest in property that the estate acquires after the commencement of the case' is included in the bankruptcy estate. 11 U.S.C. § 541(a)(7). Thus, property interests acquired after

the filing of [the petitioner's] Chapter 11 petition and prior to the conversion to Chapter 7 will be excluded from the Chapters 11 and 7 bankruptcy estates only to the extent that such property can be considered 'earnings from services performed ... after the commencement of the case.' 11 U.S.C. § 541(a)(6).

*Acton Foodservices*, 39 B.R. at 72. *See Fitzsimmons v. Walsh (In re Fitzsimmons)*, 725 F.2d 1208 (9th Cir.1984) (personal earnings of sole proprietor attorney not property of estate); *In re Lotta Water Land Co.*, 25 B.R. 32 (Bankr.N.D.Tex.1982) (income of $30,000 to $40,000 for custom harvesting earned by individuals not property of estate; income of $129,565 from sale of corn during pendency of Chapter 11 case is property of estate upon conversion to Chapter 7); *Matter of Bianco*, 52 B.R. 33 (Bankr.W.D.Pa.1985) (airline pilot post-filing personal earnings exceeding $100,000 in aborted Chapter 11, not property of estate upon conversion to Chapter 7); *Matter of Haynes*, 679 F.2d 718 (7th Cir.1982) (debtor's post-filing Navy retirement pay of $610 per month not property of Chapter 7 estate).

Section 103 which governs the applicability of Chapters specifically provides in subsection 103(h) that

"Chapter 13 of this title applies *only* in a case under such chapter." (emphasis added).

Logically, this means that the applicability of Chapter 13, including the Section 1306 broadened definition of "property of the estate," is limited to the context of a Chapter 13 case. Upon conversion, the Court must look to Section 541, which is applicable in Chapter 7 cases, and determine if its specification of property includable in the converted Chapter 7 estate is altered by any section of Chapter 13. Since the provisions of Chapter 13 (including Section 1306) are applicable only in Chapter 13 cases, its sections cannot alter the provisions of Section 541 upon conversion to Chapter 7. Thus, Section 541 determines property to be included in the converted Chapter 7 estate.

This Court concludes that upon the commencement of the Chapter 13 case, a Chapter 13 estate is created that encompasses the Section 541 specification of property of the estate as altered by Section 1306. The Section 1306 alteration, to include the debtor's future earnings and property acquired after commencement of the case, is applicable only in the Chapter 13 context. When a case is converted from Chapter 13 to Chapter 7, the Chapter 13 estate, any plan, and the case terminate. A new Chapter 7 estate is created which relates back under Section 348(a) to the date of the commencement (filing) of the original Chapter 13 petition. Pursuant to Section 103(h) the provisions of Chapter 13 no longer apply. Therefore, property of this converted Chapter 7 estate must then be determined under Section 541 which is unaltered by Section 1306 or any other section of the Bankruptcy Code. The broad specification of property under Section 541 includes all property acquired by the Chapter 13 debtor after commencement of the case and prior to conversion to Chapter 7, except future earnings. Section 541(a)(6) and (7). Further, these provisions are sufficiently broad to allow for possible post-filing changes in debtor's property through sale, reclamation, abandonment, trade-in, obsolescence or other disposition.

Since it is presumed that Chapter 13 plan payments were made from the mandatorily included future earnings, these payments are excluded by Section 541(a)(6) from property of the converted Chapter 7 estate. It is notable that Section 541(a)(6) makes no distinction in its exception to whether the earnings are pre- or post-confirmation. The earnings need only be post-filing (after commencement of the case). Thus, post-filing payments by the Chapter 13 debtor, in a converted case, never become part of the individual debtor's converted Chapter 7 estate.

Similarly, on dismissal, the Chapter 13 case and plan are terminated. In such instances, Section 349(b) basically restores all parties and property rights to the position they were in prior to commencement of

the case. This would include a return to the debtor of undisbursed payments made post-filing to the Chapter 13 trustee when no plan is confirmed.

Prior to the 1984 Amendments, the Bankruptcy Code was unclear concerning disposition of undistributed payments made pursuant to a plan whether or not the plan was confirmed. As previously noted, Section 1322(a)(1) specifies that one of the mandatory provisions of a plan is the requirement that the debtor submit all or a portion of future earnings as is necessary for execution of the plan. Except as provided in a confirmed plan or the order of confirmation, Sections 1306(b) and 1327(b) and (c) grant possession to and vest all property of the Chapter 13 estate in the debtor. Also, Section 1327 makes the confirmed plan binding on the debtor and all creditors.

When confirmed, the plan governs the relations of the parties and the debtor is bound to make the specified payments provided in the confirmed plan. These payments are specifically earmarked and set aside for distribution to creditors provided for by the confirmed plan. To the extent that the confirmed plan provides for payment from debtor's future earnings and the debtor actually makes payment to the trustee pursuant to that plan, the debtor is not entitled to possession nor is the debtor vested with title to such payments. Sections 1306(b) and 1327(b) specifically except such payments from their provisions since the debtor's right of possession and vesting of title is limited to all sums and property not otherwise provided for in the confirmed plan or confirmation order. These exceptions to possession and vesting of title in debtor indicate that debtor is to have no continuing interest in payments actually made pursuant to a confirmed plan. It is logical to infer that Congress intended that any payments actually made to the trustee pursuant to a confirmed plan would be placed in the trustee's possession and vested in the creditors provided for by such plan. The creditors' right to payment matures at the time each payment is made to the trustee pursuant to the confirmed plan. Therefore, undistributed payments which are made pursuant to a confirmed plan and thus set aside for creditors must be paid to such creditors in accordance with the provisions of the plan whether the case proceeds as a Chapter 13, converts to Chapter 7, or is dismissed.

When there is no confirmation, no plan becomes effective pursuant to which any payments can be distributed. Accordingly, when the Chapter 13 case aborts by conversion to Chapter 7, the creditors' expectation of payment pursuant to the proposed plan never matures. No interest vests in creditors. Since any undistributed payments made pursuant to such aborted proposed plan are excluded by Section 541(a)(6) from property of the Chapter 7 estate, these payments, where no plan is confirmed, remain the property of and must be disbursed to the debtor upon conversion to Chapter 7.

As noted earlier, while the Amendment of Section 1326(a)(2) by the Bankruptcy Amendments and Federal Judgeship Act of 1984 is not applicable to this case, the Court may nevertheless look to its provisions for guidance in ascertaining congressional intent. As stated by the United States Supreme Court in *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 596, 100 S.Ct. 800, 814, 63 L.Ed.2d 36 (1980):

[W]hile the views of subsequent Congresses cannot override the unmistakeable intent of the enacting one, *Teamsters v. United States*, 431 U.S. 324, 354, n. 39 [97 S.Ct. 1843, 1864, n. 39, 52 L.Ed.2d 396] (1977), such views are entitled to significant weight, *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275 [94 S.Ct. 1757, 1762, 40 L.Ed.2d 134] (1974), and particularly so when the precise intent of the enacting Congress is obscure.

*See also Powell By and Through Powell v. Schweiker*, 688 F.2d 1357, 1363 (11th Cir. 1982). The Court, however, must weigh considerations of subsequent congressional actions with extreme care in inferring the intent of an earlier Congress. *Consumer Product Safety Comm'n v. GTE Sylvania,*

447 U.S. 102, 117–18, 100 S.Ct. 2051, 2060–61, 64 L.Ed.2d 766 (1980); *Andrus v. Shell Oil Co.*, 446 U.S. 657, 666, 100 S.Ct. 1932, 1938, 64 L.Ed.2d 593 (1980).

The 1984 Amendment to Section 1326 added a new subsection (a) which requires debtor payments pursuant to the proposed plan and for disposition of such payments. If a plan is confirmed, the payments are to be disbursed to creditors. If no plan is confirmed, the payments are to be returned to the debtor. The addition of these provisions indicates a congressional intent to require debtor's commencement of plan payments at an early date and early disbursement to creditors if a plan is confirmed. There is an equally clear intent to preserve for the debtor post-filing earnings if no plan is confirmed by returning such payments to the debtor. The mandate of a return of such payments to debtor is particularly instructive since Section 1306 specifically includes post-filing earnings as property of the Chapter 13 estate. This illustrates that unless a plan is confirmed, future earnings were intended to remain the property of the debtor. It further evidences the importance attached to and special treatment accorded a debtor's future earnings in the bankruptcy setting. The provision is consistent with and lends further support to the Section 541(a)(6) exclusion of post-filing earnings from the Chapter 7 estate, upon conversion.

A more difficult problem is presented by the Section 1326(a)(2) provision that "if a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan." Although not applicable to the present case, this is an expression by a subsequent Congress concerning disposition of payments made pursuant to a "proposed plan" which is confirmed. Although this payment provision appears to be restricted to payments made under subsection (a) of Section 1326, it is the confirmation of that plan which requires the distribution of the plan payments to creditors provided for by such plan. By implication, one can reasonably infer that Congress intended that all payments made pursuant to a confirmed plan shall be paid to the creditors provided for by such plan.

This subsection creates a vested interest in creditors in plan payments, upon conversion, similar to old Chapter XI of the Bankruptcy Act.[3] While Section 1326(a)(2) does not use vesting language, it is stated in mandatory terms. It directs that payments "shall" be paid to debtor if no plan is confirmed, or if confirmed, the payments "shall" be distributed in accordance with the plan. This mandatory provision has the effect of vesting an interest in creditors provided for by a confirmed plan in all payments made pursuant to such plan.

While Section 1326(a)(2) does not specifically state that it applies to post-confirmation payments, we do have a congressionally stated intent that upon confirmation payments are to be disbursed pursuant to the plan. Logically, this was intended to include any payments made prior or subsequent to confirmation. When the provision is considered together with the Section 1326(c) requirement that the trustee shall make payments to creditors and the previously noted exceptions of Sections 1306 and 1327, one can reasonably infer that Congress intended that post-confirmation payments made pursuant to the plan are likewise to be distributed to creditors provided for by the plan. Therefore, this Court concludes that, in cases filed after the effective date of the 1984 Amendments, payments pursuant to a "proposed plan" which is confirmed, and payments made after confirmation, are to be distributed in accordance with the plan to the creditors provided for by the plan. In this Court's opinion, the 1984 Amendment was intended to assure creditors who are affected and bound by the confirmed plan that they can expect to receive payments made by the debtor

---

**3.** 11 U.S.C. § 367(3) provided that "the consideration deposited, if any, shall be distributed and the rights provided by the arrangement shall inure to the creditors affected by the arrangement ..."

11 U.S.C. § 370 provided that "the consideration, if any, deposited for them shall be distributed and the rights provided by the arrangement shall inure to the creditors to whom such debts are owing."

pursuant to the confirmed plan. This Court can find nothing in the 1984 Amendments to indicate Congress intended that a different result should occur upon conversion or dismissal.

Under Section 1307(a) a debtor has the absolute right to convert a Chapter 13 case to one under Chapter 7. Upon such conversion the Chapter 13 case and plan terminates, and the case becomes one under Chapter 7. As one treatise has noted:

> The conversion of a Chapter 13 case basically extinguishes the former proceeding, and the relations of the parties in interest are governed by the subsequent proceedings either in Chapter 7 or Chapter 11.

W. Drake & J. Morris, *Chapter 13 Practice and Procedure*, § 13.04, at 13–10 (1985). Further, they state:

> [I]t seems that creditors in a Chapter 13 case in which the debtor's plan has been confirmed should be able to expect that the payments called for by the plan will be made. Of course, this expectation would not survive a conversion of the case; nevertheless, to the extent of the funds in the trustee's possession at the time of the conversion, the creditors ought to be able to expect receipt of the payments called for by the confirmed Chapter 13 plan.

*Id.* at 13–11.

It is this creditor expectation that the debtor will make all payments provided by the aborted confirmed plan that does not survive dismissal or conversion to Chapter 7. The requirement that payments actually made pursuant to a confirmed plan "shall" be distributed in accordance with the plan is unaffected by either conversion to Chapter 7, or dismissal of the case. Therefore, the termination of the Chapter 13 plan and case by conversion to a Chapter 7 case does not divest the interests of creditors provided for by the confirmed plan to any payments actually made by the debtor pursuant to such plan prior to conversion. Since all pre-conversion payments actually made vest in creditors provided for by the confirmed plan, any payments undistributed at the time of conversion do not

become property of the Chapter 7 estate. By virtue of this creditor vesting, the debtor no longer has an interest in these payments. Since the Chapter 7 estate includes only the debtor's property as defined by Section 541, those undistributed payments are never property of the Chapter 7 estate.

Likewise, payments after dismissal of the Chapter 13 case do not become part of the debtor's estate and thus are property of the debtor. *Nash v. Kester (In re Nash)*, 765 F.2d 1410 (9th Cir.1985).

Based upon the foregoing reasoning, this Court's conclusions are as follows:

■ (1) In Chapter 13 cases filed prior to the effective date of the 1984 Amendments, where no plan is confirmed and the case is converted to Chapter 7, undistributed payments made by a debtor to the Chapter 13 trustee during the unsuccessful Chapter 13 never become property of the converted Chapter 7 estate. Such undistributed payments remain the property of and must be returned to the debtor.

■ (2) In Chapter 13 cases filed prior to the effective date of the 1984 Amendments, where a plan is confirmed and the case is converted to Chapter 7, any undistributed payments made by the debtor to the Chapter 13 trustee vest in creditors provided for by the plan as each payment is made and must be disbursed to such creditors pursuant to the provisions of the confirmed plan. These undisbursed payments never become property of the converted Chapter 7 estate.

■ (3) In Chapter 13 cases filed after the effective date of the 1984 Amendments, Section 1326(a)(2) mandates that if no plan is confirmed, undistributed payments by the debtor to the Chapter 13 trustee shall be returned to the debtor. Thus, these undistributed payments never become part of the converted Chapter 7 estate.

■ In Chapter 13 cases filed after the effective date of the 1984 Amendments, Section 1326(a)(2) mandates if a plan is confirmed, the Chapter 13 trustee shall disburse any payments pursuant to the plan to the creditors provided for by the plan. Creditors' interests in such payments vest when each payment is made and, upon con-

version of the case to Chapter 7, any undistributed payments never become property of the converted Chapter 7 estate but must be disbursed to the creditors provided for by the confirmed plan.

■ (5) There is a rebuttable presumption that payments by a Chapter 13 debtor pursuant to a plan are made from post-filing earnings. Where no plan is confirmed and the case converts to Chapter 7, any undistributed payments must be repaid to the debtor as a return of post-filing earnings and such repayment does not affect the debtor's exemption rights.

(6) The aforesaid payment to debtor or to creditors shall be paid after deducting any unpaid claims allowed under Section 503(b) and any unpaid fees and expenses payable to the Chapter 13 trustee under Section 1302 of the Bankruptcy Code or under this Court's standing orders regarding the fees and expenses of the standing Chapter 13 trustee.

Accordingly, it is

ORDERED that the trustee is authorized and directed to disburse the funds in the subject case to the debtor since no plan has been confirmed.

IT IS SO ORDERED.