**In re Henry Edward WAUGH and Grace Ida Waugh, Debtors.**

**Henry Edward WAUGH and Grace Ida Waugh, Plaintiffs,**

v.

**R.J. SALDAMARCO, Trustee, Defendant.**

**Bankruptcy No. 82–2836.**
**Adv. No. 86–0567.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Feb. 1, 1988.

■■■■■■■■■■■■■■■

James P. Johnson, Keystone Legal Services, Inc., State College, Pa., for debtors.

Donald R. Calaiaro, Pittsburgh, Pa., for trustee.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

On October 24, 1986, the Debtors, Henry Edward Waugh and Grace Ida Waugh ("debtors"), commenced an action to recover funds withheld by R.J. Saldamarco, Esq., the trustee in their chapter 13 case. The debtors aver that the funds in question were distributed to their creditors after this Court entered an order to convert the case to a chapter 7. Thus, the debtors allege that the trustee wrongfully distributed the funds. In response to the debtors' Complaint, the trustee moved for dismissal, raising several defenses. Thereafter, the parties agreed that this Court may treat the Motion to Dismiss as a Motion for Summary Judgment, so that the Court can reach the merits of the Complaint. The Court grants summary judgment to the trustee.

The debtors filed for relief under chapter 13 on August 30, 1982. This Court confirmed their chapter 13 plan on December 2, 1982; the plan provided for a monthly payment of $258.50. The plan was subsequently modified to increase the monthly payment to $300.00, but an appropriate Order of Court was not entered.

Upon the motion of the debtors, the Court converted the case to a chapter 7 on March 26, 1986. Shortly thereafter, the debtors filed the required chapter 7 schedules. The debtors listed as assets, *inter alia*, $1,405.36, the amount paid to the trustee pursuant to the chapter 13 plan, but undistributed to creditors as of that time. The debtors sought to exempt such property. In this connection, the debtors' counsel wrote to the chapter 13 trustee, requesting that the funds in question not be distributed. Nevertheless, the trustee disbursed the funds to the debtors' creditors pursuant to the chapter 13 plan.

The trustee responded to the Complaint by filing a Motion to Dismiss pursuant to Bankruptcy Rule 7012. The Complaint also named the law firm of Saldamarco and Calaiaro (the "law firm") as a defendant. As part of its Motion to Dismiss, the trustee asserts that this Court lacks jurisdiction over the law firm because the law firm had no relation to this bankruptcy, and the complaint therefore fails to state a cause of action upon which relief can be granted. The debtors subsequently agreed to withdraw the law firm as a defendant, obviating those portions of the trustee's Motion to Dismiss.

The trustee asserts that the instant action should be dismissed because the debtors failed to join necessary persons or parties. The trustee contends that the debtors' creditors, who received the funds, should be defendants in this case. Finally, the trustee asserts that this action is collaterally estopped by this Court's order of March 26, 1986, which allegedly denied the debtors' request for the return of the funds in question.

■ Bankruptcy Rule 7012(b) makes Fed.R.Civ.P. 12(b)(h) applicable in bankruptcy adversary proceedings. In considering a motion to dismiss, the Court should follow "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him for relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). Further, "the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn." *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). In the instant case, the debtors assert that the trustee improperly distributed payments to the debtors' creditors following the termination of the chapter 13 plan. The trustee contends that the creditors who allegedly received the money are indispensable de-

fendants to this action. The Court does not agree. In an analogous case, the trustee was held liable for improper distribution of funds received after a chapter 13 plan was terminated through dismissal of the bankruptcy case. *Nash v. Kester (In re Nash)*, 765 F.2d 1410 (9th Cir.1985). Thus, the Court does not conclude that this action must be dismissed for failure to join the creditors as indispensable parties. This Court follows *Nash* for this limited purpose. Other teachings of *Nash* are not followed.

■ Nor does the Court conclude that this action is barred by the Court's order of March 26, 1986. In that order, the Court struck from the order submitted the following language: "The Trustee shall return to Debtors all funds presently on account." The trustee urges that the debtors failed to state a claim upon which relief can be granted because the order of March 26, 1986 was a final adjudication and the debtors are collaterally estopped from pursuing this matter. It should be noted that the amended order makes no affirmative disposition of the funds in question. This Court does not regard the striking of this sentence from the order as a final adjudication on this issue. Therefore, the debtors have stated a claim upon which relief can be granted. However, the line struck from the debtors' requested order has some notice effect.

The Court now turns to the proper substantive disposition of the funds. By agreement of the parties, we consider this issue in the context of a motion for summary judgment. Because the parties agree that factual issues are absent, summary judgment is appropriate "if the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The dispute in this case is purely legal. In reaching a decision, the Court must consider various sections of the Code, conflicting case law and the general scheme of chapter 13.

Section 1307(a), 11 U.S.C. § 1307(a), provides that the "debtor may convert a case under this chapter to a case under chapter 7 of this title at any time." This section protects the right to convert from chapter 13 to chapter 7 as thoroughly as the debtor's statutory right to file the case as an original chapter 7 case.

■ Section 348(a) of the Code, 11 U.S.C. § 348(a), governs the effect of conversion: "Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but ... does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." Subsections (b) and (c) of section 348 contain exceptions to the above rule which are inapplicable to the instant case.

Section 348 does not provide a determination of the property of the separate chapter 13 and chapter 7 estates. The property to be included in the chapter 13 and chapter 7 estates is central to the resolution of this case. Section 541(a)(1), 11 U.S.C. § 541(a)(1), defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." Subsection (a)(6) expands the definition of property of the estate to include "[p]roceeds, product, offspring, rents or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case."

Section 1306(a) of the Code, 11 U.S.C. § 1306(a), expands the definition of property of the estate in a chapter 13 case:

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

These problems arise when payments are made to the chapter 13 trustee and the case is converted to a chapter 7 case. In such

situations, several courts have read section 348 to create a conflict between property of the chapter 7 estate, property of creditors, and chapter 13 post-petition property of the debtor. Section 348 requires the Court to look back to the filing of the original chapter 13 petition to determine what would have been property of the chapter 7 estate. This Court does not believe that by conversion of a chapter 13 case to chapter 7, the expanded chapter 13 definition of property such as post-petition earnings is now converted to property of the chapter 7 estate. This Court finds that 11 U.S.C. § 1326 treats property received by the chapter 13 trustee pursuant to a confirmed chapter 13 plan as a trust for beneficiaries of the plan.

▮ Pre-petition property may or may not be property of the chapter 13 estate. Typically a chapter 13 debtor is attempting to retain pre-petition property, such as a residence and auto, by dedicating post-petition income, usually wages. Conversion from chapter 13 to chapter 7 terminates the chapter 13 estate and trust, but it does not revoke what was lawfully ordered under the plan.

▮ The courts that have considered this issue have not reached uniform results. Funds received but not disbursed during a confirmed chapter 13 have led courts to reach at least three different results: (1) the funds are post-petition property of the debtor; (2) the funds are the property of the chapter 7 estate and may, or may not, be subject to the debtor's exemptions, and, (3) the funds are the property of the creditors pursuant to the confirmed chapter 13 plan. We think the latter result is correct.

In *In re Bullock*, 41 B.R. 637 (Bankr.E. D.Pa.1984), the debtor sought the return of all funds paid to a creditor from the time of the filing of the chapter 13 plan until the case was converted to a chapter 7. The court ruled that the funds belonged to the debtor: "[S]ince the case was converted from a chapter 13 to a chapter 7, under § 348(a) the case is deemed filed under chapter 7 as of the date the original petition under chapter 13 was filed. Thus ... the case is deemed to have been filed as a chapter 7 proceeding and that portion of

the debtor's postpetition wages, which were deducted from his salary, were deposited in the chapter 7 estate although they were not properly includable therein due to § 541(a)." *Id.* at 640. The court held that the debtor was entitled to recover all of the money paid to the creditor. The court noted that exemptions were irrelevant since the money at issue was never part of the chapter 7 estate: "Since the deducted wages were not part of the chapter 7 estate, the debtor is entitled to recover such wages in full without regard to his exemption claim." *Id.* at 640. Although the above language suggests the first result, the *Bullock* case appears to have been decided on common law grounds for money erroneously paid. The rationale of *Bullock* does not consider secured creditors' rights of adequate protection in the fund. The relief from stay granted the first mortgage holder in *Bullock* would appear to be a de facto termination of the plan. *Bullock* was decided on equitable grounds or possibly under 11 U.S.C. § 522(h) and § 549. *Bullock* has unique facts which urged that result. We dispute the logic, not the result.

In *In re de Vos*, 76 B.R. 157 (N.D.Cal. 1987) and *In re Luna*, 73 B.R. 999 (N.D.Ill. 1987), two cases involving substantially similar facts, and *Hannan v. Kirschenbaum (In re Hannan)*, 24 B.R. 691 (Bankr. E.D.N.Y.1982), a case involving an unconfirmed plan which was converted under section 1307, all three courts reached the same result using similar analyses of section 348 and section 541. The fact that a chapter 13 plan was not confirmed would be a controlling factor in these cases. The rationale the courts used was unnecessary. The court in *de Vos* noted that although 11 U.S.C. § 1322(a)(1) requires that chapter 13 debtors submit a portion of future earnings to the "supervision and control" of the chapter 13 trustee, "confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). *See also In re Peters*, 44 B.R. 68 (Bankr.M.D.Tenn. 1984); *In re McFadden*, 37 B.R. 520 (Bankr.M.D.Pa.1984); *cf. Nash*, 765 F.2d 1410 (wage deductions received by the trustee before the chapter 13 case was

dismissed should not have been distributed to the creditors, and should have reverted to the debtor). Where a chapter 13 plan is not confirmed, the result is sound. However, when a chapter 13 plan has been confirmed and the trustee has made distribution under the plan, a recovery from creditors is not authorized under the Code and is a prescription for confusion. This policy result would be destructive of cooperation in a chapter 13 case. We believe those cases ignore the trust nature of the fund created by a consummated chapter 13 plan. 11 U.S.C. § 1326.

The second approach, that the chapter 13 trustee must turn over undistributed funds to the chapter 7 trustee upon conversion, was articulated in *Resendez v. Lindquist (In re Resendez)*, 691 F.2d 397 (8th Cir. 1982). Although the court recognized that "when there is a conversion, the debtors are deemed to have filed a Chapter 7 case at the time the Chapter 13 case was filed," pursuant to section 348(a), the court failed to discuss section 541 or its implications. *Id.* at 399. Rather, the court relied on the turnover provision of the Code, section 542, 11 U.S.C. § 542, in holding that the chapter 13 trustee was required to turn over the undistributed funds to the chapter 7 trustee. This policy would condition the result on the speed of the trustee's distribution. Because a chapter 13 proceeding is purely voluntary, the *Resendez* court refused to allow the debtors to claim exemptions in the undistributed property, and opined "[s]ince the debtor voluntarily made the payments in question to a Chapter 13 trustee for the benefit of creditors, it would be unfair to permit the monies to be now claimed as exempt ... on the basis that they had not been distributed to the creditors." *Id. See also In re Giambitti*, 27 B.R. 492, 493 (Bankr.D.Or.1983) (Since "§ 1327 ... makes a confirmed plan binding on the debtor as well as the creditors, and § 1307 ... permits the debtor ... to ... convert it to chapter 7, it would be unfair to permit the debtor to claim as exempt funds which the debtor has voluntarily committed to the plan.").

These cases fail to distinguish between the debtor's different pre-petition and post-petition rights in various property. By confirmation of a plan, a chapter 13 debtor's post-petition property, typically wages, becomes subject to chapter 13 plan creditors. Such wage income is not subject to the chapter 7 trustee claims for pre-petition creditors. Chapter 7 estate of an individual debtor deals with property in being at the time of the filing. A chapter 13 estate can include future income. Wages are not such property. Such property created post-petition belongs to the confirmed plan or to the debtor, not the chapter 7 trustee. The above cases compound their error by giving post-petition property to the chapter 7 trustee and then denying the debtor's exemption.

Other cases have differed from *Hannan* and *Bullock* over the effect of section 348 on the determination of post-conversion property of the estate. In *In re Wanderlich*, 36 B.R. 710, 714 (Bankr.W.D.N.Y. 1984), the court declared that "section 348 operates to compliment, not to replace, sections 541 and 1306." Especially noteworthy is the court's holding "section 348 in no way interferes with the section 1306 declaration that post-petition, pre-conversion property in a chapter 13 case is 'property of the estate'." *Id.* In other words, the court did not find that the post-conversion property of the estate was limited to the definition contained in section 541. A plan was not confirmed in *Wanderlich*.

In *In re Tracy*, 28 B.R. 189 (Bankr.D.Me. 1983), the court held that "[s]ection 348 does not state that upon conversion a case is to be treated as if it had been *originally filed under the chapter to which it was converted.*" *Id.* at 189, 190. Rather, the court stated that "[s]ection 348(a) merely specifies that the date of the filing of the petition, the commencement of the case, or the order for relief are unaffected by conversion...." *Id.* These cases interpret the larger chapter 13 estate created by section 1306 as the same estate which is to be turned over to the chapter 7 trustee. We do not agree. The *Tracy* court held that post-petition, pre-conversion wages were property of the chapter 7 estate. The

court analogized those wages to claims which arose during the same period: "Such claims are generally treated as having arisen before the date of the original filing of the petition, and may be discharged." *Id.* Under 11 U.S.C. § 1305, these post-petition creditors must have provided property or services necessary for the debtor to perform under the plan.

Epstein, *Consequences of Converting a Bankruptcy Case*, Am.Bankr.L.J. 339 (1986), opens this subject for reflection without recommending a definite result.

The third approach to the disposition of post-petition, pre-conversion wages is set forth in *In re Lennon*, 65 B.R. 130 (Bankr. N.D.Ga.1986). We would follow *Lennon*. There, the trustee sought instructions from the court on the disposition of undistributed payments held upon conversion from chapter 13 to chapter 7 in a case in which the plan was unconfirmed. The court noted "that Section 541(a)(6) makes no distinction in its exception to whether the earnings are pre- or post-confirmation. The earnings need only be post-filing ... Thus, post-filing payments by the Chapter 13 debtor in a converted case, never become part of the individual debtor's converted Chapter 7 estate." *Id.* at 135. Therefore, the court held that such payments must be returned to the debtor. In dicta, the court discussed the effect of conversion on a confirmed plan in cases filed both before and after the 1984 amendments to the Bankruptcy Code. The court "logical[ly] ... infer[red]" that payments made to the trustee pursuant to a confirmed chapter 13 plan in a case filed prior to the 1984 amendments vest in a creditor upon payment. *Id.* at 136. In a case filed subsequent to the 1984 amendments, the court stated that the result would be the same since the 1984 amendments change section 1326(a)(2) to provide that "if a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan." The court interpreted the mandatory language of this subsection as creating a non-divestible right to plan payments in creditors, notwithstanding conversion from chapter 13 to chapter 7.

We do not follow *In re Bullock*, 41 B.R. 637, and *Nash v. Kester*, 765 F.2d 1410. We follow the reasoning of *In re Lennon*, 65 B.R. 130. Creditors who receive payments pursuant to the confirmed chapter 13 plan should not be requested to return them to the debtor upon conversion. Such a result is inconsistent with the intent of a confirmed chapter 13 plan and would create great confusion. The word "shall" in section 1326(a)(2) creates the condition of a trust. Creditors have a right to the funds in an active confirmed chapter 13 plan upon payment by the debtor. Upon conversion or dismissal, the chapter 13 estate and plan terminate. The trustee's services terminate, 11 U.S.C. § 348(e), and the creditors' right to and expectation of payment ceases.

The speed by which the chapter 13 trustee makes distribution should not determine the rights of creditors and debtors in the funds. Payments received from debtors from post-petition property before the filing date of the motion to convert are subject to the confirmed chapter 13 plan. The court has ample power to redress inequities, as in *Bullock*, where there was a common law inequity created, to-wit, payment to a secured creditor after foreclosure was granted.

The debtor receives the funds if a plan is not confirmed and if the trustee receives payment after the filing of a motion to convert. The mandate of 11 U.S.C. § 1326 creates a trust of chapter 13 payments received during the pendency of a confirmed plan. The trust created should not be dependent on the speed of its distribution. The valid confirmation order of the Bankruptcy Court should not be made a nullity by a later failure of the debtor to observe a confirmed plan. All of the parties were entitled to rely on the final confirmation order.

In the instant case, the trustee distributed $1,405.36 subsequent to conversion. The payments were received during the period that the chapter 13 plan was in effect. Those funds are not property of the debtors.