**In re Linda A. PEGUES, Debtor.**

**No. 99–1–0042–DK.**

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

Aug. 23, 2001.

Scott R. Robinson, Camp Springs, MD, R. Manny Montero, Esquire of Garza, Regan & Associates, P.C., for debtor.

Timothy P. Branigan, Chapter 13 Trustee.

### *MEMORANDUM OF OPINION*

DUNCAN W. KEIR, Bankruptcy Judge.

### I. Background.

On January 4, 1999, Debtor commenced this case by the filing of a voluntary petition under chapter 13 of the United States Bankruptcy Code. On April 8, 1999, Debtor filed an amended chapter 13 plan (the "Plan") that Debtor proposed for confirmation. The Plan provided, *inter alia,* that Debtor's employer would pay to the chapter 13 trustee the sum of $188.00 per month. The Plan was to continue for 60 months. Among other disbursements provided for, were disbursements to G.E. Capital Mortgage on pre-petition arrears until paid in full.

At a continued hearing upon confirmation held on May 25, 1999, the Plan was further amended by interlineation solely for the purpose of increasing the amount of the Plan payment to $227.00 per month. As interlineated, the Plan was confirmed. On May 26, 1999, the Order Confirming Plan was entered and an Employer's Payment Order was also entered requiring Home Depot, Debtor's employer, to deduct the $227.00 monthly Plan payment from Debtor's wages and remit it to the chapter 13 trustee. The Employer Payment Order subsequently was amended on May 22, 2000, solely for the purpose of substituting chapter 13 trustee Timothy P. Branigan (the "Chapter 13 Trustee") for chapter 13 trustee, Thomas L. Lackey.

On February 15, 2001, the Chapter 13 Trustee filed a motion for disallowance of claim asserting that Wells Fargo Home Mortgage ("Wells Fargo"), successor-in-interest to G.E. Capital Mortgage, had refused to accept distributions made pursuant to the Plan and had advised the Chapter 13 Trustee that the collateral securing the claim of Wells Fargo had been or would be executed upon. The Chapter 13 Trustee asserted that the claim should be disallowed to permit the returned funds to be redisbursed to other creditors entitled to disbursement, pro rata, under the Plan.

However, on March 2, 2001, before action upon the Chapter 13 Trustee's motion to disallow claim, this case was converted to a case under chapter 7 of the United States Bankruptcy Code by the filing of a notice of conversion pursuant to 11 U.S.C. § 1307(a).[1] Consequently, this court denied the Chapter 13 Trustee's motion to disallow abandoned claim on April 3, 2001.

The Chapter 13 Trustee has filed a Motion for Reconsideration of Order Denying

---

1. Hereafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code unless otherwise noted.

Motion to Disallow Abandoned Claim (the "Motion"), asserting that the facts recited above are typical of many cases before this court. The Chapter 13 Trustee argues that the conversion of the case to a case under Chapter 7 should not prevent the redisbursement of funds proposed by the motion for disallowance of claim and therefore that the Chapter 13 Trustee's motion to disallow abandoned claim should not have been denied by reason of the conversion.

The issues raised by the Motion appear to be ones of first impression not only within this District, but within this Circuit. It is also clear that the Chapter 13 Trustee has brought to this court a matter about which numerous other courts have disagreed and learned treatises have suggested no discernable conclusion. Indeed, it appears that the provisions of the United States Bankruptcy Code not only fail to point to a concrete legal result but answer some questions with conflicting provisions and others not at all.

**II. Discussion.**

■ Before revisions to the Bankruptcy Code contained in the Bankruptcy Reform Act of 1994 [2], there was a split among the courts as to whether property acquired post-petition by the debtor in a chapter 13 case was property of the estate upon conversion to chapter 7. The property at issue in those cases included both post-petition wages as well as other property acquired post-petition.

Prior to the 1994 revision, some courts held that property acquired post-petition became part of the chapter 7 estate upon conversion from chapter 13. For example,

in *In re Lybrook*, 951 F.2d 136 (7th Cir. 1991), the court held that property inherited more than 180 days after the debtors' chapter 13 filing became part of their chapter 7 estate upon conversion. Some courts specifically addressed post-petition wages and held that those wages became part of the chapter 7 estate upon conversion. *See, e.g., In re Daniels*, 79 B.R. 88 (Bankr.S.D.Fla.1987). Other courts held that post-petition wages held by the chapter 13 trustee at the time that the case is converted to chapter 7 should be disbursed to creditors under a confirmed plan. *E.g., Ledford v. Burns (In re Burns)*, 90 B.R. 301 (Bankr.S.D.Ohio 1988). In *Resendez v. Lindquist*, 691 F.2d 397 (8th Cir.1982), the court held that once a chapter 13 debtor makes plan payments to the chapter 13 trustee, those funds no longer belonged to the debtor and the funds become part of the debtor's chapter 7 estate. According to the Eighth Circuit Court of Appeals, these funds were not even subject to exemptions in the chapter 7 case. *Id.* at 399.[3]

In the 1994 Reform Act, Congress seemingly sought to address these issues and to specifically overrule the result in *In re Lybrook*, with the enactment of revised Section 348. Prior to the 1994 amendment to Section 348, subsection (f) did not exist. Thus, Section 348, entitled "Effect of Conversion," failed to provide any specific guidance as to what property was included in, or excluded from the estate in the converted case. Section 348(a) provided (and still provides) that conversion does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief. 11 U.S.C.

---

**2.** Pub.L. No. 103–394, 108 Stat. 4106 (Oct. 22, 1994).

**3.** A detailed discussion of this debate may be found in Keith M. Lundin, 4 *Chapter 13 Bankruptcy*, § 315.1, at 315–1—315–24 (2000).

*See also* Michaela M. White, *The Effects of Chapter 13 Plan Confirmation and Case Conversion on Property*, 26 CREIGHTON L.REV 785 (1993).

§ 348(a). Therefore, a case converted to chapter 7 is deemed to have been filed and commenced on the date the chapter 13 case was filed.

Despite the guidance provided in Section 348(a), two questions remained concerning the determination of what property was in the bankruptcy estate in the converted chapter 7 case. First, as of what point in time was that determination to be made? Second, what definition of property of the estate was to be used?

The first question was answered by the amendments contained in the 1994 Reform Act. Section 348(f) as amended[4] directs that property of the estate in a case converted from chapter 13 shall be determined as of the original petition date, not as of the date of conversion. However, Section 348(f)(1)(A) is unclear as to which definition of "property of the estate" applies in the converted case. While the definition of "property of the estate" set forth in Section 541[5] generally excludes property acquired by the debtor after the commencement of the case, the definition set forth in Section 1306[6] (at least applicable to the case before conversion to chapter 7) includes certain property acquired after the commencement of the case by the debtor including post-petition earnings of the debtor. Since the enactment of Section 348(f), most courts have determined that revised Section 348 only makes sense if the definition of "property of the estate" set forth in Section 541(a) is applied. This court concurs with that reasoning. Even before the 1994 amendments, this court (Mannes, J.) held that "§ 1306 was rendered inapplicable to the definition of property of the estate by conversion of the case out of Chapter 13 (*see* § 103(h)), and that at that point § 541 became the sole provision for defining the Chapter 7 estate." *In re Lepper*, 58 B.R. 896, 898 (Bankr.D.Md.1986). The 1994 amendments, however, did not specifically ad-

4. Section 348(f) provides in part:

(f)(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—

(A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion; and

(B) valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case, with allowed secured claims reduced to the extent that they have been paid in accordance with the chapter 13 plan.

(2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property in the converted case shall consist of the property of the estate as of the date of conversion.

5. Section 541 defines "property of the estate" in a chapter 7 case. Subsection (a) states: "The commencement of a case under section 301 [voluntary cases], 302 [joint cases], or 303 [involuntary cases] of this title creates an estate ... [including] all legal or equitable interests of the debtor in property as of the commencement of the case."

6. Section 1306 defines "property of the estate" in a chapter 13 case. It states:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title.

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

(b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

dress the disposition of funds paid to a chapter 13 trustee pursuant to a confirmed plan, but not yet disbursed at the time of conversion to chapter 7.

What should a chapter 13 trustee do with funds remaining in that trustee's possession at the time of conversion of a case? There are at least four choices:

1. Deliver the funds to the chapter 7 trustee appointed in the converted case.

2. Pay the monies into the Registry of Court.

3. Disburse the monies in accordance with the terms of the confirmed plan, notwithstanding the conversion to chapter 7.

4. Refund those monies to the debtor.

■ Where (as in this case) the monies remaining in the chapter 13 trustee's hands are derived from post-petition wage withholding payments, pursuant to Section 348(f) and applying the definition in Section 541(a), such monies are not property of the bankruptcy estate. Therefore, the court must rule out option 1, above. The money should not be paid over to the chapter 7 trustee.

Section 347 addresses "unclaimed property." Section 347 specifically provides that a trustee under chapter 7, 12 or 13 shall stop payment on any check remaining unpaid after 90 days from the final distri-

bution and shall thereupon pay any remaining property of the estate into the Court Registry. This provision only applies to account balances resulting from trustee checks which remain unpaid; therefore, Section 347 is inapposite to the money held by the Chapter 13 Trustee in the instant case which was returned to the Chapter 13 Trustee by Wells Fargo. For these reasons, the court must rule out option number 2. The monies in the Chapter 13 Trustee's hands are not "unclaimed property" pursuant to Section 347 and should not be paid into the Registry of Court.

The remaining choices are for the Chapter 13 Trustee to pay the returned undisbursed funds to Debtor, or to redisburse those funds to the other creditors entitled to receive distributions under the Plan (pro-rata as applicable).[7]

The Chapter 13 Trustee argues for the second of these two choices, asserting that funds originally disbursed prior to conversion and that come within the Chapter 13 Trustee's control again, should be re-disbursed under the Chapter 13 Trustee's authority contained in Section 1326(a)(2).[8] To return the funds to the Debtor would create an "unfair windfall", according to the Chapter 13 Trustee. It appears that the Chapter 13 Trustee would distinguish monies remaining in the hands of the Chapter 13 Trustee because conversion had occurred prior to the next periodic

---

7. This issue only arises in cases where conversion to chapter 7 occurs after confirmation of a plan in chapter 13. If the conversion occurs before confirmation, the trustee is required to return the post-petition wage plan payments to the debtor. *See* 11 U.S.C. § 1326(a)(2). *See also Stamm v. Morton (In re Stamm)*, 222 F.3d 216 (5th Cir.2000) (holding that pre-confirmation wages earned after the filing of chapter 13 petition and paid to the chapter 13 trustee were not property of the estate in the converted chapter 7 case and should be distributed to the debtor).

8. Section 1326(a)(2) provides:

A payment made under this subsection shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable. If a plan is not confirmed, the trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed under section 503(b) of this title.

11 U.S.C. § 1326(a)(2).

disbursement under the plan, as opposed to monies which had been disbursed but returned to the trustee and had not been redisbursed before conversion. The court can find no legal or analytical basis to distinguish between these two subtypes of undisbursed funds held by a chapter 13 trustee at the time of conversion.[9]

In response to the Chapter 13 Trustee's Motion, the United States Trustee argues that undisbursed funds held by a chapter 13 trustee at the time of conversion to chapter 7 occurring after confirmation of the plan should be disbursed by that chapter 13 trustee consistent with the confirmed plan, notwithstanding the conversion. In this regard, the United States Trustee urges the court to follow the majority of opinions of courts which have addressed this issue. *See e.g., In re Bell,* 248 B.R. 236 (Bankr.W.D.N.Y.2000); *In re Hardin,* 200 B.R. 312 (Bankr.E.D.Ky. 1996); *In re Halpenny,* 125 B.R. 814 (Bankr.D.Hawai'i 1991); *In re Galloway,* 134 B.R. 602 (Bankr.W.D.Ky.1991); *In re Radebaugh,* 125 B.R. 797 (Bankr.W.D.Mo. 1991); *Ledford v. Burns (In re Burns),* 90 B.R. 301 (Bankr.S.D.Ohio 1988); *Waugh v. Saldamarco (In re Waugh),* 82 B.R. 394 (Bankr.W.D.Pa.1988); *In re Redick,* 81 B.R. 881 (Bankr.E.D.Mich.1987); *In re Rutenbeck,* 78 B.R. 912 (Bankr.E.D.Wis. 1987); *In re Lennon,* 65 B.R. 130 (Bankr. N.D.Ga.1986).[10] *See also Mehan v. Sparkman (In re Mehan),* 2000 WL 1010577

(Bankr.E.D.Pa.2000) (holding that the chapter 13 trustee is not liable for return of funds disbursed to creditors after conversion of case to chapter 7, but not reaching the "broader" question of whether undistributed plan payments made by a debtor prior to conversion pursuant to a confirmed plan should be distributed to creditors after conversion pursuant to the terms of the confirmed plan).

However, the United States Trustee opposes the Motion, asserting that the conversion of the case to chapter 7 terminates the services of the chapter 13 trustee pursuant to Section 348(e).[11] Upon termination, the United States Trustee argues that the chapter 13 trustee's authority under Section 1302 terminates and the chapter 13 trustee therefore cannot object to a claim. If the plan does not provide for payment of funds of the type held by the chapter 13 trustee, the United States Trustee argues the chapter 13 trustee should return the funds to the debtor.[12] Accordingly, the United States Trustee would apparently reach the opposite result in each of the proposed two sub-types of monies held by the chapter 13 trustee, than that proposed by the Chapter 13 Trustee. That is, monies not yet disbursed would be disbursed under the plan, notwithstanding conversion, whereas monies refunded to the chapter 13 trustee by a refusing creditor would be returned to the debtor, in the absence of specific au-

---

9. Debtor filed a Response to Trustee's Motion ("Debtor's Response"). In Debtor's Response, Debtor argues that there is no basis in law or fact to distinguish between a distribution and a redistribution of funds.

10. In *In re Rutenbeck* 78 B.R. at 912 and *In re Lennon,* 65 B.R. at 130, the courts' discussions of post-confirmation distribution is dicta, as the chapter 13 plans in those cases were unconfirmed at the time of conversion to chapter 13.

11. Section 348(e) provides that "[c]onversion of a case under section 706, 1112, 1208, or 1307 of this title terminates the service of any trustee or examiner that is serving in the case before such conversion." 11 U.S.C. § 348(e).

12. Apparently, the United States Trustee also distinguishes between monies held by the chapter 13 trustee upon conversion to a chapter 7 case simply because they have not yet been disbursed, as opposed to monies returned by a refusing secured creditor.

thority in the plan to the contrary. As stated above and for the reasons discussed below, the court does not find a basis for distinguishing between these two subtypes of retained funds.

As set forth in the cases cited hereinbefore, the majority of the courts that have addressed this issue agree that once a plan is confirmed, the chapter 13 trustee should disburse to creditors pursuant to the terms of the plan all funds received from debtor's wages. This court agrees with this result.

With the enactment of amended Section 348 in 1994, Congress intended to resolve a split of authority as to the chapter 7 trustee's rights in property that the debtor acquired post-petition. The legislative history indicates that Congress intended to overrule the result in *Lybrook*.[13] However, the amendment did not address the issue before the court in the instant case. *See In re Hardin*, 200 B.R. at 312. As a result, there remains an unresolved split between courts that have opined on this question.

For example, in *In re Hardin*, the trustee argued that had the funds been disbursed to creditors prior to conversion, no recovery of such funds by the debtors could be effected, and thus no different result should occur as to undisbursed funds. *Id.* The court analyzed Section 1326(a)(2) which provides in part that "[i]f a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable." The court then noted that there was precedent supporting the trustee's position, and although the precedent predates the 1994 amendments, the precedent did not appear to be negatively affected thereby. *Id.* at 313. The court concluded:

> [T]he Court agrees ... that confirmation vests rights in the creditors which require that post-petition wages paid to the chapter 13 trustee be distributed by him to those creditors even after conversion of the case to one under chapter 7. While the Court reaches this conclusion based upon the provisions of § 1306,

**13.** The legislative history of Section 348(f) provides:

> This amendment would clarify the Code to resolve a split in the case of [sic] law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13 (and chapter 12), any property acquired after the petition becomes property of the estate, at least until confirmation of a plan. Some courts have held that if the case is converted, all of this after-acquired property becomes part of the estate in the converted chapter 7 case, even though the statutory provisions making it property of the estate does [sic] not apply to chapter 7. Other courts have held that the property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed.
>
> These latter courts have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.
>
> This amendment overrules the holding in cases such as *Matter of Lybrook*, 951 F.2d 136 (7th Cir.1991) and adopts the reasoning of *In re Bobroff*, 766 F.2d 797 (3d Cir.1985). However, it also gives the court discretion, in a case in which the debtor has abused the right to convert and converted in bad faith, to order that all property held at the time of conversion shall constitute property of the estate in the converted case.

140 CONG. REC. H10752–01, H10770–10771 (1994).

§ 1326, *et seq.* of the Bankruptcy Code, the Court believes that equitable factors also compel the same result. Those factors include the delay occasioned in the confirmation process, the reliance of creditors upon the distribution called for in the confirmed plan, the finality afforded a confirmed plan when enforcement is sought by the debtor, and the forbearance by many creditors in asserting other rights which they may have (such as a right to adequate protection pending confirmation) in reliance upon funds being accumulated by the trustee for distribution after confirmation occurs.

*Id.* at 314.

Similarly, in *In re Galloway,* 134 B.R. at 602, the debtor's plan was confirmed and then the case was converted to a chapter 7 case. *Id.* At the time of conversion, the chapter 13 trustee held all of the approximate $3,200.00 paid by the debtor. *Id.* The court noted that several courts have concluded "that the creditor's interest in Chapter 13 plan payments vest when each payment is made and, upon conversion of the case to Chapter 7, any undistributed payments do not become property of the converted Chapter 7 estate but must be disbursed according to the terms of the confirmed plan." *Id.* at 603 (citing *In re Halpenny,* 125 B.R. at 814; *In re Radebaugh,* 125 B.R. at 797; and *In re Milledge,* 94 B.R. 218 (Bankr.M.D.Ga.1988)).

In *In re Waugh,* the court found that "11 U.S.C. § 1326 treats property received by the chapter 13 trustee pursuant to a confirmed plan as a trust for beneficiaries of the plan." *In re Waugh,* 82 B.R. at 398. Upon conversion, and consistent with Section 348(e), the court stated that the chapter 13 estate and trust are terminated, but the conversion does not "revoke what was lawfully ordered under the plan." *Id.* In *In re Lennon,* (albeit in dicta) the court recognized that when confirmed, a plan governs the relationship among the parties and the debtor is required to make the payments provided for in the confirmed plan. *In re Lennon,* 65 B.R. at 136. As a result, the court held that "undisbursed payments which are made pursuant to a confirmed plan and thus set aside for creditors must be paid to such creditors in accordance with the provisions of the plan . . . ." *Id.*

Other courts reject the creditor-vesting approach and hold that undisbursed funds held by the chapter 13 trustee upon conversion should be paid to the debtor.[14] *See e.g., In re Boggs,* 137 B.R. 408 (Bankr. W.D.Wash.1992); *McCullough v. Luna (In re Luna),* 73 B.R. 999 (N.D.Ill.1987); *In re de Vos,* 76 B.R. 157 (N.D.Ca.1987). In *In re Luna,* the court rejected the vesting theory, citing Section 348(e), stating:

This position cannot be reconciled with 11 U.S.C. § 348(e) of the Code, however, which provides, that "conversion of a case under section . . . 1307 of this title terminates the service of any trustee or examiner that is serving the case before such conversion." As the language of this section unambiguously indicates, the Code precludes the Trustee from taking any action with respect to these funds after the conversion. . . . Thus, the court finds that a creditor's right to payment vests not at the time of confirmation, but at the time of *distribution* by a Trustee authorized to act under the Code.[15]

---

**14.** In the Debtor's Response, Debtor (not surprisingly) urges this position.

**15.** The United States Trustee relies upon section 348(e) in arguing that the Chapter 13 Trustee has no remaining standing to move to disallow the claim of Wells Fargo. However, the United States Trustee apparently does not agree that Section 348(e) would prevent the Chapter 13 Trustee from disbursing funds under a confirmed plan, pursuant to Section 1326(a)(2).

*In re Luna,* 73 B.R. at 1002 (citations omitted). The opinion in *In re Luna* has in turn been criticized. In *In re Redick,* the United States Bankruptcy Court for the Eastern District of Michigan found that such a policy would encourage creditors to seek "daily" distributions from the chapter 13 trustee for fear the case would be converted and the funds the creditor expected under the confirmed plan would be lost. *Id.* at 886. "[D]aily distribution would create an administrative nightmare." *Id.* The court is also mindful of certain secured creditors' expectations under a confirmed plan. Furthermore, in some cases where the confirmed plan provides for payments to secured creditors, the making of such plan payments may constitute adequate protection pursuant to 11 U.S.C. § 361. The payment of undisbursed funds, upon conversion, to someone other than the creditors would be unfair to such secured creditors. *See In re Rutenbeck,* 78 B.R. at 913.

■ This court finds that in the absence of specific legislative direction, it is the relative rights of the debtor and creditors in the undisbursed funds that must determine what a chapter 13 trustee is required to do with undisbursed funds upon a post-confirmation conversion. Once the debtor makes plan payments pursuant to a confirmed plan proposed by the debtor, the debtor relinquishes all right in those payments. On the other hand, the creditors provided for under such confirmed plan are entitled to distributions as provided for in such plan. This

conclusion is consistent with the language of Section 1306(b) which states that "[e]xcept as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate." Furthermore, this conclusion gives effect to the specific limitation in the debtor's right to refund set forth in Section 1326(a)(2), which states in part: "*[i]f a plan is not confirmed,* the Trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed under Section 503(b) of the title." (Emphasis added). This court concludes that a debtor has no right to plan payments after confirmation of a plan, except where excess funds remain after all distributions authorized by the plan have been made in full. *See In re Lennon,* 65 B.R. at 135. This "exception[ ] to possession ... indicate[s] that debtor is to have no continuing interest in payments actually made pursuant to a confirmed plan.... The creditors' right to payment matures at the time each payment is made to the trustee pursuant to the confirmed plan." *Id.* at 136. When the creditors receive payment from the chapter 13 trustee, their rights are satisfied.

■ The court holds that post-petition wages paid by the debtor to the chapter 13 trustee for disbursement under a confirmed plan should be distributed by the chapter 13 trustee in accordance with the terms of the confirmed plan.[16] Although the service of the chapter 13 trustee is terminated by Section 348(e), it is clear

---

16. The court's holding in this case does not apply to undisbursed funds held by the chapter 13 trustee at the time of conversion which are proceeds of pre-petition assets which would be property of the chapter 7 estate pursuant to Sections 348(f) and 541(a). If before distribution by the chapter 13 trustee, a chapter 7 trustee or other party with standing alleges and proves that monies held by the chapter 13 trustee are proceeds of such pre-

petition property, such funds may be required to be turned over to the chapter 7 trustee. *See Wyss v. Fobber (In re Fobber),* 256 B.R. 268, 277–78 (Bankr.E.D.Tenn.2000) (holding that proceeds of a sale, which took place while in chapter 13, of an asset owned by the debtors at the commencement of the bankruptcy case are property of the estate in the re-converted chapter 7 case).

that Congress intended that the chapter 13 trustee shall wind up the affairs of the chapter 13 estate, including disbursing monies on hand to the appropriate recipient. The request for disallowance of the secured claim of a creditor who has refused a payment is nothing more than a request by the chapter 13 trustee to be permitted to disburse the returned funds in accordance with the provisions of the plan. It comes within the residual duties and authority of the chapter 13 trustee to wind up the chapter 13 affairs by paying out remaining funds. Further support for this conclusion can be found in Federal Rule of Bankruptcy Procedure 1019. Upon conversion to chapter 7, Rule 1019(5)(B) requires the chapter 13 trustee to file a final report and account not later than 30 days after conversion. The court's decision in this case which allows the trustee to both disburse funds after conversion and to file objections to abandoned claims in order to disburse funds is consistent with Rule 1019. In order to comply with Rule 1019, the chapter 13 trustee necessarily must file objections to such claims. In some cases, especially where the chapter 13 trustee files his objection to abandoned claim after conversion, the chapter 13 trustee may have to move for an extension of time to complete the distribution of funds and file the required final report and account in accordance with Rule 1019. *See In re Bell,* 248 B.R. at 240 n. 6; *In re Redick,* 81 B.R. at 886.

The motion by the Chapter 13 Trustee to disallow the abandoned claim of Wells Fargo (in effect seeking permission to re-disburse money to the remaining claimants) was not rendered moot, nor was the standing of the Chapter 13 Trustee to seek this court's approval terminated by the conversion to chapter 7. Accordingly, the Chapter 13 Trustee's Motion shall be granted, and the Chapter 13 Trustee's motion to disallow the abandoned claim and

permit the disbursement of the refunded monies to creditors entitled to distribution under the Plan shall be granted.

An Order consistent with these findings and conclusions will be entered.