ROTH, Circuit Judge,
Dissenting:
Barry Michael converted his bankruptcy from Chapter 13 to Chapter 7. The question we must answer is whether Michael’s undistributed post-confirmation, but pre-conversion, wages, which were paid to the Chapter 13 trustee pursuant to the confirmed reorganization plan, should be distributed to his creditors pursuant to the plan or returned to Michael. The Majority concludes that the addition of 11 U.S.C. § 348(f) to the Bankruptcy Code mandates that the funds revert to Michael. I respectfully disagree. The language of § 348(f) does not require such a result.
I turn first to the context in which this situation is most likely to occur. When a Chapter 13 plan of reorganization has been confirmed, the debtor will make regular payments to the Chapter 13 trustee. In many cases, the funds come from a wage attachment as happened here. At regular intervals — monthly, bi-monthly — the trustee, pursuant to § 1326(c), shall pay out the funds to the creditors as provided for in the confirmed plan. The trustee is the conduit for the funds to get to the creditors. Thus, the funds held by the trustee prior to these pay-outs do not build up significantly. If, ultimately, the debtor cannot keep up with the provisions of the plan and decides to convert to Chapter 7, the accumulated funds in the hands of the trustee are not of a sizeable amount. Thus, there has been little reason to dispute their disposition.
The reason for the accumulation of the funds here was because GMAC Mortgage refused to accept the payments pursuant to the plan after August 15, 2006, and sent the checks back to the trustee. Michael had been unable to keep up his own regu *318 lar payments on the mortgage; as a result, on August 15, GMAC Mortgage obtained relief from the automatic stay in order to foreclose. Michael’s wage attachment, however, continued on until October 2009 when he converted his bankruptcy to a Chapter 7. Although the plan provided for distribution to other secured and unsecured creditors, the trustee did not make payments to them. For that reason, more than $9,000 accumulated in the hands of the trustee. During this three year period, either Michael or the trustee could have requested an amendment to the plan. Neither did so. Michael continued to make payments for the benefit of his creditors. He also continued to enjoy the benefits of a Chapter 13 plan.[1]
There is little precedent to assist us in resolving this situation. There is evidence, however, that at least within the Third Circuit, the custom has been that, when a debtor converted a Chapter 13 bankruptcy to a Chapter 7, the Chapter 13 trustee paid out the accumulated funds to the creditors as provided for in the plan. In fact, in December 2011, the Third Circuit Judicial Council approved the Western District of Pennsylvania Local Bankruptcy Rule 3021 — 1(f), which provides that “[i]n the event of conversion or dismissal following the confirmation of a chapter 13 plan, then the chapter 13 trustee shall distribute all funds received prior to the effective date of the conversion or dismissal, in accordance with the terms of the confirmed plan.” The Clerk of the Bankruptcy Court for the Western District of Pennsylvania believes that this rule codified a long time practice, going back to 2004. This rule— or practice — has not been challenged until, in this case, the sum held by the trustee became a sizeable one. The issue then is: Who gets the benefit of this windfall, the debtor or the creditors?
To answer this question, we must determine whether these funds — on conduit through the trustee to the creditors in accord with the confirmed plan — are property of the Chapter 13 estate.
As the Majority observes, prior to the Bankruptcy Reform Act of 1994(Act), courts were sharply divided on whether post-petition and post-confirmation property, which was acquired by the debtor during a Chapter 13 case, remained property of the bankruptcy estate or was returned to the debtor upon the estate’s conversion to Chapter 7. Compare Resendez v. Lindquist, 691 F.2d 397, 399 (8th Cir.1982) with Bobroff v. Cont’l Bank (In re Bobroff), 766 F.2d 797, 803 (3d Cir.1985). The Act sought to resolve this dispute with the amendment to § 348, which provided that “when a case under chapter 13 ... is converted to a case under another chapter,” 11 U.S.C. § 348(f)(1), the “property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion,” id. at § 348(f)(1)(A).
I agree that the amendment described what became of property or rights to property acquired by the debtor during the pendency of the Chapter 13 proceedings. I have no argument against this interpretation. Mr. Bobroff[2] keeps his potential tort recovery and Mr. Lybrook[3] keeps the *319 farm land inherited from his father because the tort recovery and the farmland inheritance were not property of the estate as of the date of the filing of the petition.[4] To the extent that Michael’s wages were not attached, the amendment also covered these unattached wages earned during the course of the Chapter 13 bankruptcy. On conversion, these wages would not be transferred to the Chapter 7 estate. See Stamm v. Morton (In re Stamm), 222 F.3d 216, 217 (5th Cir.2000) (“Section 348(f)(1), where applicable, establishes that the [debtors’] post-petition income does not remain property of the estate upon conversion”). There is simply no language that suggests otherwise. See e.g., In re Pegues, 266 B.R. 328, 331-32 (Bankr.D.Md.2001); In re Bell, 248 B.R. 236, 239 (Bankr.W.D.N.Y.2000); In re Hardin, 200 B.R. 312, 313 (Bankr.E.D.Ky.1996).
However, we are not dealing simply with wages here but with that portion of the wages that had been attached under the plan and paid to the trustee for distribution to the creditors. I maintain that there is a crucial difference. It is my position that, although the debtor’s unattached wages earned during the reorganization period will not be included in the Chapter 7 estate, the attached wages that have been paid to the trustee pursuant to the plan should be. Under the plan, these wages are under the supervision and control of the trustee.[5] Because these funds are under the supervision and control of the trustee, they should be paid out by the trustee in accord with the provisions of the plan. Moreover, the attached wages are the quid pro quo that the debtor has given up during the pendency of the reorganization in return for being permitted to stave off foreclosure and cure the mortgage default, retain the use of his automobile, and enjoy the automatic stay.
The Majority depends on Bobrojf to support its decision. However, a careful analysis of Bobrojf reveals that the Court’s decision was motivated by its fear of potential inequities that might result when the recovery from a debtor’s post-petition litigation was included in a converted Chapter 7 estate. Central to the Court’s decision was the notion that creditors should not receive a windfall from funds that would not have been in the bankruptcy estate if the initial filing had been for a Chapter 7 proceeding. According to the Court, such a result would be inconsistent with the Bankruptcy Code’s goal of encouraging debt repayment. See Bobrojf, 766 F.2d at 803. If a debtor had to risk losing either all or a portion of the property he acquired during his repayment attempt, the incentive to try voluntary repayment would be substantially diminished. Id. The Court, therefore, opined that post-petition funds should revert to the debtor in order to ensure that both the creditors and debtor would be returned to “precisely the same position they were in had the debtor never sought to repay his debts....” M[6]
*320 The concerns the Court expressed in In re Bobroff, however, are not present in Chapter 13 proceedings where a debtor derives a benefit from the confirmed bankruptcy plan. Once a reorganization plan is confirmed, the relationship between the debtors and creditors change; the provisions of the plan bind the parties, generating benefits and corresponding responsibilities. 11 U.S.C. § 1327(a); see Ledford v. Burns (Matter of Burns), 90 B.R. 301, 304 (Bankr.S.D.Ohio 1988) (“[A] Chapter 13 Plan represents a legislatively sanctioned, and judicially approved new series of rights and responsibilities among the debt- or and the debtor’s creditors”). In fact, under a confirmed plan, each party receives a benefit. The debtor is entitled to continue “receiving whatever benefits [ ]he believed were significant enough for [him] to have converted to and proceeded in Chapter 13,”[7] In re Bell, 248 B.R. at 239, and the creditors receive the money paid into the Chapter 13 estate, In re Pegues, 266 B.R. at 336. Thus, the debtor makes payments in order to fulfill his obligations under the reorganization plan and in exchange for the benefits he derives from the plan.[8] In re Bell, 248 B.R. at 239; see In re Lennon, 65 B.R. 130, 136 (Bankr.N.D.Ga.1986) (“These payments are specifically earmarked and set aside for distribution to creditors provided for by the confirmed plan”).
Here, unlike in Bobroff, the payments Michael made were in exchange for the benefits he derived from the plan. Therefore, if the undistributed funds revert to him, instead of being distributed to the creditors in accordance with the plan’s terms, Michael would receive a windfall. See O’Quinn v. Brewer (In re O’Quinn), 143 B.R. 408, 413 (Bankr.S.D.Miss.1992) (“It appears to this Court to be patently unfair to allow a debtor to drive and depreciate an automobile, occupy a home or *321 use household goods based on a promise to his creditors in the form of a court approved plan, and then allow the debtor to snatch away the monies which the trustee is holding to make the payments, but has not yet disbursed, by allowing the debtor to pick an opportune time to convert”). He would obtain the benefits the confirmed plan offered without having to pay his creditors. Such a result would not only be patently unfair, but also contradict the reasoning of Bobroff.[9] Michael would be in a better position (and his creditors in a worse position) than he would have been if he had initially filed for bankruptcy under Chapter 7.
Therefore, my interpretation of § 348(f) will not discourage voluntary debt repayment under Chapter 13. It merely requires debtors to honor their obligations to creditors as was agreed under the confirmed plan. In re Bell, 248 B.R. at 240. I hope that we -will not see the reversal of a Third Circuit practice that over the years has balanced the benefits to both parties under a plan of reorganization by providing that the undistributed funds held by the trustee will be distributed to the creditors pursuant to the confirmed plan. If we adopt the Majority’s position, we will be permitting a windfall in this unusual case where inaction by the debtor and by the trustee has permitted funds to accumulate in a situation in which that normally would not occur.
For the above reasons, I respectfully dissent.

.Generally, the benefits available to a debtor under a Chapter 13 plan of reorganization are the saving of a residence from foreclosure, the curing a mortgage delinquency over time with more affordable payments, the maintaining of possession and use of an automobile or other personal property, and the automatic stay.

. Bobroff, 766 F.2d at 803.

. Matter of Lybrook, 951 F.2d 136 (7th Cir.1991).

. I would note, however, that neither the Bobroff nor the Lybrook Chapter 13 plans were confirmed. A confirmed plan would have dealt with these property expectations during the period of reorganization. It would appear that the consideration of these additional assets may be a factor in the failure of approval of a plan of reorganization.

. The plan provides in paragraph 1 that "[t]he future earnings of the Debtor are submitted to the supervision and control of the trustee— Debtor's employer shall pay to the Trustee the sum of $138.62 bi-weekly, beginning in May, 2006 for a period of 53 months, plus $1,294.67 paid as of April 4, 2006.”

.Of course, Bobroff is also distinguishable from this case in the fact that the Court in Bobroff held that because the debtor was not eligible for Chapter 13, "the conversion to that chapter was void ab initio and the provi *320 sions of § 1306 cannot be invoked to determine which property comprises the estate.” Bobroff, 766 F.2d at 803.

. Although varied, the benefits a debtor receives may include: saving a residence from foreclosure, curing a mortgage delinquency over time with more affordable payments, maintaining possession over an automobile or other personal property, or having the benefit of the automatic bankruptcy stay remain in place for an extended period of time.

. Conversion does not retroactively alter this arrangement and undo the benefits the debtor received from the plan. See e.g., In re Pegues, 266 B.R. at 336; In re Galloway, 134 B.R. 602, 603 (Bankr.W.D.Ky.1991); Waugh v. Saldamarco (In re Waugh), 82 B.R. 394, 398-99 (Bankr.W.D.Pa.1988); In re Redick, 81 B.R. 881, 887 (Bankr.E.D.Mich.1987). The funds the debtor paid were in exchange for the benefits of the reorganization plan. Revocation of the plan only alters this dichotomy going forward; it does not "retroactively revoke the intent,” In re Bell, 248 B.R. at 239, that debtors had when they initially chose to file under Chapter 13; nor does it retroactively alter the fact that a debtor made payments "to continue to enjoy the ongoing benefits of that plan,” id. at 240.
The Bankruptcy Code supports this view. Sections 1326(a)(2) & (c) affirmatively set forth the Chapter 13 trustee’s obligation to distribute a debtor’s payments to creditors pursuant to the terms of the confirmed plan. See 11 U.S.C. § 1326(a)(2) & (c). Although § 348(e) terminates the services of the trustee when a case is converted to chapter 7, the trustee is still required to perform certain tasks. See Fed. R. Bankr.P. 1019. Federal Rule of Bankruptcy Procedure 1019 details several of these post-conversion duties. See e.g., id. at 1019(4), 1019(S)(B)(ii). Thus, the Rule demonstrates that Congress did not intend § 348(e) to be interpreted too literally. Since Congress intended for the trustee to perform several ancillary duties to clean-up and finalize the administration of the estate, In re Parrish, 275 B.R. 424, 430 and & n. 7 (Bankr.D.Colo.2002), there is no logical reason why distribution of funds pursuant to the previously confirmed reorganization plan cannot be included as one of those administrative duties.

. Although the Majority does not explicitly state, it implies that § 348(f)’s bad faith provision, see 11 U.S.C. § 348(f)(2), would prevent this type of harm from befalling creditors. This argument is unconvincing. One can conjure many scenarios where a debtor files for Chapter 13 bankruptcy, with bona fide intentions of repaying his financial obligations, only to discover that he miscalculated his ability to repay his creditors. This type of conduct cannot be characterized as “game-the-system” behavior.